565 A.2d 1143

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Walter BALL and Barry Kabinoff, Appellees.**

Supreme Court of Pennsylvania.

Argued April 11, 1989.

Decided Oct. 6, 1989.

Certiorari Denied Jan. 16, 1990.

See 110 S.Ct. 844.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Ann Lebowitz, Philadelphia, for appellant.

Gregory T. Magarity, Philadelphia, for appellees.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We are being asked by the Commonwealth to overturn a suppression order issued by the trial court on the grounds that Appellees were economically coerced into incriminating themselves in violation of the Fifth Amendment. Suppression was based on two interrelated findings. First, the suppression court determined that insurance company representatives investigating a destructive fire at Appellees' property were transformed into "agents" of the state by virtue of their extensive cooperation with the police. Second, the suppression court also found that the insurance company, now allegedly acting as an arm of law enforcement, coerced the Appellees by forcing them to answer questions and deliver documents under oath or forfeit payment under the policy and thereafter turned over the testimonial transcript and documents to the police who intended

to introduce the material at trial. It was this evidence given under oath which was suppressed.

The factual history of this case began with a fire which damaged the contents and a building leased by the Appellees and operated as their trucking company. On April 29, 1982, Appellees filed a claim with the Hartford Accident and Indemnity Company for $91,332.35. Several days after the fire, the Fire Marshall's office concluded that it was arson. On two occasions shortly after, the Fire Marshall sought to question both Appellees who took the position that, in addition to lacking any knowledge of the fire, they would not answer without having first consulted an attorney. Concurrently, of course, Hartford was conducting its own inquiry through its Claims Supervisor.

On June 8, 1982, the Fire Marshall's office hand delivered to Hartford's Supervisor a request for information pursuant to the Arson Reporting Immunity Act, 40 P.S. § 1610.1 *et seq.*[1] Hartford turned over "pertinent policy information

---

1. Relevant portions of the Act are:

§ 1610.3 *Disclosure of information*

(a) Fire loss information.—Any authorized agency may, in writing, require any insurance company at interest to release to the requesting authorized agency any or all relevant information or evidence deemed important to the authorized agency which the insurance company may have in its possession relating to a fire loss under investigation by the authorized agency. Relevant information may include, without limitation herein:

(1) pertinent policy information relevant to a fire loss under investigation, including any application for such a policy;

(2) underwriting information or risk inspection reports;

(3) policy premium payment records which are available;

(4) history of previous claims made by the insured; and

(5) material relating to the investigation of the loss, including statements of any person, proof of loss, and any other information relevant to the investigation by the authorized agency.

(b) *Notification for investigation.—*

(1) Whenever the investigation of a fire loss by an insurance company insuring the loss indicates that the probable cause of the fire loss was arson, then the company shall notify, in writing, the appropriate authorized agency and upon the request of any authorized agency, shall provide the requesting authorized agency with such fire loss information developed from the company's inquiry into the fire loss as may be requested by the authorized agency and

and statement of loss submitted ... and other relevant information or evidence." [2]   On June 15, 1982, the Claims Supervisor sent his file to Hartford's attorney, Michael Henry, for further action.   Attorney Henry immediately contacted the Office of the District Attorney requesting their information.   On the following day, as well as one week later, he met with police detectives who gave him access to Investigation Reports related to the fire.   At all times during these activities, all investigators had concluded that the fire was due to arson.

On June 24, 1982, Attorney Henry sent a letter to the Appellees demanding that pursuant to the insurance policy they submit to questioning under oath and also deliver certain documents, including a list of employees of their firm.[3]   The examination took place on July 21 and 22, 1982, at Henry's office.   Appellees were represented by counsel Warren Vogel.

Critical to our understanding of this matter were the following statements made prior to the commencement of the questioning:

WALTER L. BALL and BARRY D. KABINOFF, having been duly sworn, testified as follows ...

MR. HENRY: This proceeding is an examination under oath conducted pursuant to the Hartford Accident and Indemnity Company Policy Number 39CF 420430 which policy insured the Austin Truck Rental, Inc. firm at the premises located at 2300 Church Street in Philadelphia, Pennsylvania.   This examination under oath of Mr. Kabinoff and Mr. Ball deals with a fire that occurred at the premises on Church Street with the fire occurring on March 16, 1982.

MR. VOGEL: I just want to state in the record an agreement which we have reached earlier today on the

the insurance company may provide to any authorized agency any information it may have relating to fire loss;

2.   A copy of the letter is included at S.T., pg. 878a.

3.   Investigators were dubious about the claims of lost inventory and believed that employees could furnish pertinent data.

production of certain documents. You had sent me a rather extensive letter dated June 24, 1982 requesting that the insured submit certain documentation to you. I have had several discussions with you and I believe we have reached some form of agreement on the production which will be made, including an agreement whereby you, on behalf of your firm and on behalf of your client, have agreed that the financial and business information being delivered to you today is being delivered under a stipulation of confidentiality, specifically that none of this information will be divulged to any third person, that is any person other than members of your firm or persons within Hartford, and that both your firm and Hartford agree that it will not be disseminated elsewhere. I would like and hope you will agree that we can commit that to a written agreement within the next few days.

MR. HENRY: I have no objection to the agreement with the understanding that if this, if the notes of testimony and exhibits of this case be subpoenaed by anybody that's out of the control of my law firm and Hartford to resist that subpoena. Aside from that we agree that none of the information that's provided us today will be divulged to any third party.

MR. VOGEL: In that same sense I believe we have an understanding that upon resolution of this matter the financial and other business information being given to you will be returned to Austin Truck Rental—let's continue off the record.

(Whereupon, a discussion was held off the record.)

MR. HENRY: Back on record.

I think we should put back on the record that Mr. Vogel and I just discussed was the fact that the exhibits that are presented to us today will remain confidential within the confines of this law office and Hartford absent any subpoenas being issued or any other such documents requesting the exhibits or the notes of testimony and upon the completion of this examination under oath I would maintain in my file copies of the exhibits as well as

the examination under oath notes of testimony and we guarantee they will not be divulged to any third party. (S.T. at 872a–874a)

\* \* \* \* \* \*

Attorney Henry then continued exchanging information with the police and informed the District Attorney of the existence of the examination under oath. (S.T. at 347a.) On September 3, 1982, the District Attorney invoked the Act and requested Hartford to send him the transcript and documents obtained from the Appellees. The company complied, also sending along a list of the employees.

Appellees were arrested on February 4, 1983, and charged with arson, causing or risking a catastrophe, attempted theft by unlawful taking or disposition, and conspiracy. After a lengthy evidentiary hearing, the suppression court agreed to suppress specifically the transcript and employee list, the only subject matter raised in this review.

The court's suppression order and opinion, adopted by the Superior Court, 378 Pa.Super. 643, 544 A.2d 1038, agreed with the two main allegations advanced by the Appellees: that Attorney Henry was, in effect, an agent of the Commonwealth in investigating the fire; and that he coerced them economically into making self-incriminating statements under a threat of refusing to pay for their loss.[4]

Our cases have held that, indeed, under certain circumstances, the Fifth Amendment bar against compelling evidence is violated through an improper exercise of economic coercion. See, for example, our analysis in the *Matter of Glancey*, 515 Pa. 201, 527 A.2d 997 (1987), and *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). In addition, we recognize that private citizens can act as an instrument or agent of the state. *Commonwealth v. Cor-*

4. Briefs submitted by both sides present a confusing argument over whether *Miranda* warnings are an issue: The lower court concluded in diota that the legislature could resolve the problem of warning insureds by adopting a "Miranda-like" system. The Commonwealth brief also raises the *Miranda* issue, but the Appellees insist *Miranda* is not implicated. In light of the fact that no custodial interrogation occurred here, we see no basis for addressing the *Miranda* issue.

*ley,* 507 Pa. 540, 491 A.2d 829 (1985), and *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968). Where such symbiotic relationships exist and baldly seek to coerce self-incrimination, we have stepped in to vindicate fundamental rights.

On the factual posture of this case, nevertheless, we now decide that the court below erroneously suppressed the evidence gained from the testimony under oath. We predicate our findings on the evidence offered here. We draw attention, at the outset, to the fact that Attorney Henry emphatically warned Appellees and their attorney that the testimony was subject to discovery by anyone with proper authority. The trial court concluded that their agreement could be pierced only by a subpoena, but Attorney Henry specifically indicated that he would respond to "any other such documents requesting the exhibits or notes of testimony." In any case, a subpoena is not required under the Arson Reporting Immunity Act which merely demands that the request for information be made "in writing," which was done in this case. On this record, we determine that Appellees were warned properly that whatever they said or delivered could be divulged to an "appropriate authorized agency" pursuant to the statute. Appellees thereby waived whatever confidentiality they possessed. Furthermore, Appellees' attorney was seeking confidentiality only on business and financial records. There is no evidence that the Fifth Amendment privilege was raised at all at the meeting with Attorney Henry.

Nor are we persuaded that any coercion, properly understood, took place here. Attorney Henry's warning was that "failure to respond *may* in and of itself be considered a material breach of the policy of insurance." (Emphasis added.) That hardly amounts to coercion. Appellees could have insisted on awaiting the outcome of any criminal action before making statements in a civil proceeding. As Justice Flaherty once noted aptly: "Imposition of admittedly difficult choices is not necessarily unconstitutional." *Commonwealth v. Coder,* 490 Pa. 194, 415 A.2d

406 (1980). Appellees' choice was a difficult one, but choice there was on this record.

Reversed and remanded for further proceedings consistent with this opinion.

LARSEN and ZAPPALA, JJ., concur in the result.

NIX, C.J., did not participate in the consideration or decision of this matter.