Mark D. CAMERON, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Laurie A. CAMERON, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Steven W. CAMERON, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Nos. 3:93–1278–07, 3:93–1279–07 and 3:93–1280–07.

United States District Court, D. South Carolina, Columbia Division.

Nov. 4, 1994.

**583**

J. Kendall Few, John Cannon Few, Few & Few, P.A., Greenville, SC, James E. Butler, Jr., Robert D. Cheeley, Lee Tarte, J. Frank Myers, Jason Crawford, George W. Fryhofer, III, Albert M. Pearson, III, Patrick A. Dawson, Butler, Wooten, Overby & Cheeley, Atlanta, GA, Joel O. Wooten, Jr., Peter J.

Daughtery, Columbus, GA, for Mark D. Cameron.

J. Kendall Few, John Cannon Few, Few & Few, P.A., Greenville, SC, James E. Butler, Jr., Robert D. Cheeley, Lee Tarte, James W. Butler, Jr., J. Frank Myers, Jason Crawford, George W. Fryhofer, III, Albert M. Pearson, III, Patrick A. Dawson, Butler, Wooten, Overby & Cheeley, Atlanta, GA, Joel O. Wooten, Jr., Peter J. Daughtery, Columbus, GA, for Laurie A. Cameron.

J. Kendall Few, John Cannon Few, Few & Few, P.A., Greenville, SC, Robert D. Cheeley, Lee Tarte, James E. Butler, Jr., J. Frank Myers, Jason Crawford, George W. Fryhofer, III, Albert M. Pearson, III, Patrick A. Dawson, Butler, Wooten, Overby & Cheeley, Atlanta, GA, Joel O. Wooten, Jr., Peter J. Daughtery, Columbus, GA, for Steven W. Cameron.

Stephen G. Morrison, Joel Haywood Smith, Susan M. Glenn, Clarence Davis, Nelson, Mullins, Riley & Scarborough, Columbia, SC, Arthur P. Greenfield, Snell & Wilmer, Phoenix, AZ, Brian D. Sieve, Kirkland & Ellis, Chicago, IL, Paul Cappuccio, Kirkland & Ellis, Washington, DC, Kyle H. Dreyer, Hartline, Dacus, Dreyer and Kern, W. Richard Davis, Strasburger & Price, Dallas, TX, John T. Hickey, Jr., Jay P. Lofkowitz, Kirkland & Ellis, Chicago, IL, Jeffrey A. Rosen, Kirkland & Ellis, Washington, DC, Michael P. Cooney, Dykema Gossett, Detroit, MI, Douglas C. Gessner, Walter R. Lancaster, Kirkland & Ellis, Chicago, IL, Robert R. Gibson, Lincoln, NE, for General Motors Corp.

*MEMORANDUM OPINION AND ORDER*

HADEN, District Judge, Sitting by Designation.

Pending are Plaintiffs' motions to reinstate certain discovery orders vacated by the Honorable G. Ross Anderson, Jr., District Judge, prior to his recusal from this matter. Plaintiffs seek discovery of certain documents for which Defendant has asserted attorney-client and/or work product privileges. The documents are included in two groups: (1) Legal files; and (2) the Elwell documents. Judge Anderson found certain documents within

those files to be unprivileged. This Court, *de novo,* has undertaken an *in camera* review of those documents and no others.

At the outset, it may be appropriate to enunciate the considerations and standards the Court has employed in its review of the documents in question. The Court reviews the appropriate considerations and standards for application of the attorney-client and work product privileges in turn.

## I.

### ATTORNEY–CLIENT PRIVILEGE

■ The United States Supreme Court has discussed generally the attorney-client privilege:

> "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (Mcnaghten rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.... 'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.' [*Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980) ].... the purpose of the privilege [is] 'to encourage clients to make full disclosure to their attorneys.' [*Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) ]." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

The attorney-client privilege applies to corporate clients. *Upjohn Co. v. United States, supra,* 449 U.S. at 390, 101 S.Ct. at 683, 66 L.Ed.2d at 591, *citing, United States v.*

*Louisville & Nashville R. Co.,* 236 U.S. 318, 336, 35 S.Ct. 363, 369, 59 L.Ed. 598 (1915).

■ The onus of demonstrating the applicability of attorney-client privilege falls upon the party asserting the privilege. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). *Accord, Sheet Metal Workers Int. Ass'n v. Sweeney,* 29 F.3d 120, 125 (4th Cir. 1994); *United States v. Tedder,* 801 F.2d 1437, 1441 (4th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987); *United States v. (Under Seal),* 748 F.2d 871, 876 (4th Cir.1984); *Darnell v. McMurray,* 141 F.R.D. 433, 434 (W.D.Va. 1992); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 50 (M.D.N.C.1987). The party asserting the attorney-client privilege "must establish not only that the attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones, supra,* 696 F.2d at 1072. "In practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." *United States v. (Under Seal), supra,* 748 F.2d at 876.[1]

■ When a court scrutinizes a particular communication to determine whether it is protected by attorney-client privilege, the test applied in this Circuit is the widely cited four-step examination outlined in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950). As stated in *United States v. Jones, supra,* 696 F.2d at 1072:

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his

---

**1.** A substantial number of documents submitted as privileged by the Defendant fall within the "cryptic" category.

client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law, or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Accord, United States v. Tedder, supra,* 801 F.2d at 1441–42;[2] *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984); *N.L.R.B. v. Harvey,* 349 F.2d 900, 907 (4th Cir.1965); *Henson v. Wyeth Laboratories, Inc.,* 118 F.R.D. 584, 587 (W.D.Va.1987); *In re Grand Jury Investigation,* 640 F.Supp. 1047, 1050 (S.D.W.Va.1986) (Haden, C.J.).

■■■ The attorney-client privilege applies not only to communications from the lawyer to the client, but also extends "to protect communications by the lawyer to his client, agents, or superiors, or to other lawyers in the case of joint representation, if those communications reveal *confidential* client communications." (emphasis added). *United States v. (Under Seal), supra,* 748 F.2d at 874.[3] Not all communications between the aforementioned parties, however, are privileged. Only those deemed "confidential" may be protected from discovery. As described by the Court of Appeals, "confidential" communications are those "not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means." *United States v. (Under Seal), supra,* 748 F.2d at 874, *citing* Supreme Court Standard 503(a)(4) ("A communication is 'confidential' if not intended to be disclosed to third per-

sons other than those to whom disclosure is in the furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."). The Court of Appeals in *United States v. (Under Seal), supra,* 748 F.2d at 875, stated:

" '[T]he "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] ... by the attorney as so intended." In determining whether it was to be reasonably "assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.' "

*Quoting, In re Grand Jury Proceedings, supra,* 727 F.2d 1352, 1356, *quoting, United States v. Jones, supra.*

■■■ The privilege does not extend to documents or communications relating to matters the client reveals or intends to reveal to others. *United States v. (Under Seal), supra,* 748 F.2d at 875, *citing In re Grand Jury Proceedings, supra,* 727 F.2d at 1356. *Accord, Glaxo, Inc. v. Novopharm Ltd.,* 148 F.R.D. 535, 538 (E.D.N.C.1993); *Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.,* 144 F.R.D. 170, 174 (D.Mass.1992); *Gottlieb v. Wiles,* 143 F.R.D. 241, 249 (D.Colo.1992); *Western Trails, Inc. v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4, 13–14 (D.D.C.1991); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989,* 133 F.R.D. 515, 518 (N.D.Ill. 1990). Where a communication contains both non-confidential and confidential information, the court must remove, or redact the

---

**2.** In *Tedder, supra,* 801 F.2d at 1441, the Court of Appeals also cited to the test outlined in 8 Wigmore, *Evidence* § 2292 (Mcnaghten rev. 1981):

"Wigmore holds the privilege to exist: '(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.' "

**3.** In *United States v. (Under Seal), supra,* 748 F.2d at 874, n. 5, the Court cited with approval Supreme Court Standard 503(b), stating it "pro-

vides a comprehensive guide to the federal common law of attorney-client privilege." Standard 503(b) states:

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself and his representative and his lawyer and his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client, or (5) between lawyers representing the client."

confidential information from the communication before releasing it to the adverse party. *United States v. (Under Seal), supra,* 748 F.2d at 875, n. 7.

■ The privilege of a party to withhold otherwise discoverable materials cuts across the grain of traditional notions of discovery as a tool to bring all relevant facts to the light of day. *United States v. (Under Seal), supra,* 748 F.2d at 875 ("Although the [attorney-client] privilege has a venerable pedigree and helps to ensure competent and complete legal services, it is nonetheless inconsistent with the general duty to disclose and impedes the investigation of the truth."); *In re Grand Jury Proceedings, supra,* 727 F.2d at 1355 ("[The attorney-client] privilege ... is 'in derogation of the public's "right to every man's evidence[.]" ' " *Quoting, In re Horowitz,* 482 F.2d 72, 81 (2nd Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)); *N.L.R.B. v. Harvey, supra,* 349 F.2d at 907. *See* Rule 26(b)(1) of the *Federal Rules of Civil Procedure* ("[Generally,] [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." [4]).

■ Because the attorney-client privilege is an exception from the otherwise liberal construction of discovery rules, *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ("[D]iscovery rules are to be accorded a broad and liberal treatment."), its use is not favored by federal courts. *United States v. Oloyede,* 982 F.2d 133, 141 (4th Cir.1992), *quoting, Herbert v. Lando,*

441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *In re Grand Jury Proceedings, supra,* 727 F.2d at 1355. Therefore, assertions of attorney-client privilege are "to be ' "strictly confined within the narrowest possible limits consistent with the logic of its principle." ' " *In re Grand Jury Proceedings, supra,* 727 F.2d at 1355, *quoting, In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3rd Cir.1979). *See United States v. Oloyede, supra,* 982 F.2d at 141; *Grand Jury Proceedings Under Seal v. United States,* 947 F.2d 1188, 1190 (4th Cir. 1991) ("[T]he [attorney-client] privilege must be strictly construed."); *United States v. Tedder, supra,* 801 F.2d at 1441; *N.L.R.B. v. Harvey, supra,* 349 F.2d at 906, *quoting, Hatton v. Robinson,* 31 Mass. (14 Pick.) 416, 422 (1833) (" '[T]he privilege of exemption from testifying to facts actually known to the witness, is in contravention to the general rule of law; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy, upon which it is allowed[.]' "); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., supra,* 116 F.R.D. at 49 ("Notwithstanding its ancient roots and modern necessity, the privilege must be strictly construed to ensure that it does not unduly impinge on the more general, overriding duty of insisting that investigations and decisions be based on truth and reality as opposed to fiction or fabrication.").

## II.

## WORK PRODUCT PRIVILEGE

While application of the attorney-client privilege is the creation of federal common law, the application of the work product privilege was created and is governed by Rule 26(b)(3) of the *Federal Rules of Civil Procedure.* Rule 26(b)(3) states, in pertinent part:

"**Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of

---

4. Thus, it is important for the parties to note the distinction between information *discoverable* and information *admissible* at trial. Simply because a document is discoverable does not make it admissible at trial; conversely, merely because a document will not be admissible at trial does not make it privileged or undiscoverable.

documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The rationale behind Rule 26(b)(3) was stated in the seminal Supreme Court case addressing the work-product privilege, *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 393–94, 91 L.Ed. at 462 (1947):

"Proper preparation of a client's case demands [a lawyer] assemble information, sift whatever he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their client's interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly ... termed ... 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore invio-

late, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

Clearly, "the work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)[5]. With that backdrop, the Court explicitly stated in *Hickman*, *supra*, 329 U.S. at 511–12, 67 S.Ct. at 394, 91 L.Ed. at 462–63, that the work product privilege was not absolute; nonetheless, the Court failed to provide more than a general analysis of when the privilege may be breached:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning."

---

5. In *Nobles*, *supra*, 422 U.S. at 238–39, 95 S.Ct. at 2170, 45 L.Ed.2d at 154, the Court reiterated the rationale behind the work product privilege, and extended its application to documents prepared by agents of attorneys:

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine

is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."

*Accord, United States v. Nobles, supra,* 422 U.S. at 239, 95 S.Ct. at 2170, 45 L.Ed.2d at 154 ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived."). The Court thereafter placed the burden of justification for abrogating the privilege on the party seeking the document:

"[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted." *Hickman,* 329 U.S. at 512, 67 S.Ct. at 394, 91 L.Ed. at 463.

██ In this Circuit, the work product of a lawyer or his agent is divided into two types: (1) opinion work product and (2) non-opinion work product. Although the former enjoys absolute immunity, the latter is protected only by qualified immunity. As stated by our Court of Appeals in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984 (1992):

"[W]ork product [is divided] into two parts, one of which is 'absolutely' immune from discovery and the other only qualifiedly immune. As a philosophical extension of the attorney-client privilege ... the pure work product of an attorney insofar as it involves 'mental impressions, conclusions, opinions or legal theories ... concerning the litigation' is immune to the same extent as an attorney-client communication. *Cf. Duplan [Corp. v. Moulinage et Retorderie],* 509 F.2d [730,] 735–36 [ (4th Cir. 1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975) ]. This is so whether the material was actually prepared by the attorney or by another 'representative' of the party. Fed.R.Civ.P. 26(b)(3). All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.' Thus in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need." (footnotes omitted).

██ Not all documents prepared by a defendant which later may be used in litigation are protected by the work product privilege. The Court of Appeals has recognized a party often may undertake investigations for multiple purposes, "not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency ... and to respond to regulatory agencies. *Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.*" (emphasis added). *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 984. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 136 (N.D.Ill.1993) ("[T]he anticipation of future litigation must have been the primary motivation which led to the creation of the documents. . . . Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable."); *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982) (To fall within the protection of the privilege, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."). The foregoing emphasizes the problematic situation arising when a party's documentation reflects concerns for both safety about the product or workplace in issue *and* potential litigation. As a practical matter, a company seeking to avoid potential litigation over an unsafe product or workplace will use internal investigations for both purposes simultaneously.[6] Deciphering the

---

**6.** The Court of Appeals also instructs that a "driving force" of internal documentation may be the desire to prevent "reoccurrences." *National Union Fire Ins. Co. of Pittsburgh, Pa., su-*

"driving force" [7] behind the documentation of such investigations may be difficult indeed.[8]

The Court of Appeals has provided guidance to trial courts by instructing as follows: "The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." (emphasis in original). *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 984. Many of the documents in the case at bar to which Defendant claims work product privilege do not disclose, either in the document or from any other source, the actual or potential claim or the actual event or series of events that generated the documents were prepared. For many documents, Defendant merely asserts they were prepared in anticipation of potential litigation. Under *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* such an insufficient description may fail to satisfy the standard for making an initial showing of work product privilege.

■■■■ Where a party has made an initial showing of work product privilege protection, the adverse party yet may be entitled to otherwise privileged non-opinion work product documents.[9] An adverse party, however, may discover non-opinion documents only upon a showing of substantial need. Placing the burden of making a showing of substantial need on the party challenging the document ensures the challenging party will undertake its own investigations and research:

"The documents falling within this classification are clothed with a qualified immunity that is grounded in the propriety aspect of the work. The immunity for this class of documents is little more than an 'anti-

freeloader' rule designed to prohibit one adverse party from riding to court on the enterprise of the other." *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 985.

■■■■ Although the foregoing standards appear straightforward, difficulty of application occurs when contested documents contain both opinion and non-opinion work product for which the adverse party has made the requisite showing of substantial need. It would be unfair to protect entire documents from disclosure merely because an attorney has attached an opinion to non-opinion details for which an adverse party substantially needs and cannot discover from other sources. The Fourth Circuit has addressed the foregoing situation in an equitable fashion, stating: "If opinions and theories about the litigation are only part of the document otherwise discoverable, the court may require production of a redacted copy." *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 985. In practice this equitable approach places the burden on the court to determine what portion of a document fall within opinion or non-opinion classification. The line between opinion and non-opinion work product often may be fine.

### III.

### APPLYING THE PRIVILEGE TESTS

#### A.

#### THE LEGAL FILES

■■■■ Bearing in mind the foregoing standards for determining whether particular documents are privileged, and if so, whether the privilege has been breached by conduct,

---

*pra,* 967 F.2d at 984. Where the "driving force" generating the documentation is the desire to prevent "reoccurrences," rather than potential litigation, the adverse party may discover the document. Difficulty of evaluation of such documents results, however, because the desire to prevent "reoccurrences" is often linked intimately to "potential litigation"; and because a major reason many companies seek to prevent "reoccurrences" is to avoid potential litigation.

7. *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 984.

8. The Court notes a substantial number of documents for which Defendant has asserted work product privilege appear to have been prepared for both potential litigation and to improve safety, efficiency and to prevent reoccurrences. *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 984. *See Part III, infra.*

9. Opinion work product is absolutely protected. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., supra,* 967 F.2d at 984.

waiver, disclosure or substantial need[10], the Court has undertaken a *de novo in camera* review of the challenged documents. The Court concludes the following Legal Files documents are protected by privilege: *In camera* Document Nos. 26, 224, 216, 119, 118, 120, 225, 28, 142. The Court concludes the following Legal Files documents are not protected by privilege: *In camera* Document Nos. 34, 19 are not covered by attorney-client privilege; both documents constitute non-opinion work product for which substantial need has been shown. For *in camera* Document Nos. 32, 31, 33, 35, 30, 36, the Court concludes the attorney-client privilege does not apply.

 *In camera* Document No. 233 is partially privileged. Plaintiffs have made the requisite showing of substantial need to breach the privilege regarding the non-opinion work product therein incorporated. Therefore, the Court concludes a "redacted copy," per *National Union Fire Ins. Co. of Pittsburgh, Pa., supra,* 967 F.2d at 985 and *United States v. (Under Seal), supra,* 748 F.2d at 875, n. 7., shall be made available to the Plaintiffs consistent with the following: the title page is not privileged; the table of contents page is not privileged; page one is privileged; page two is privileged from the top of the page down to the second paragraph beginning, "Edward C. Ivey was interviewed by ..."—page two is unprivileged from that point through to page three; page three is unprivileged from the beginning of the page through the middle of the page where the sentence concludes "'... Olds could spend on fuel systems.'"—from the end of the foregoing sentence through the end of that paragraph is privileged—the remaining balance of page three is not privileged; page four is not privileged from the top of the page through three-quarters of the page ending with the phrase, "'... takes effect in 1977.'"—from that point until the end of the page is privileged; page five is

privileged from the beginning of the page until the beginning of the second paragraph, which states: "Document No. 71051 ..."—the remaining balance of the page is not privileged through the bottom of the page with the phrase ending "... has not been located; ..."—the remaining balance of the page is privileged (footnote 1 is unprivileged from the beginning of the footnote through the end of the phrase "'as small as possible.'"—the remaining balance of footnote one is privileged); the top two lines on page six are privileged, the remaining balance of the page is not; the remaining balance of the document is not privileged with the exception of the last paragraph on page 17, and all of page 18.

### B.

### THE ELWELL FILES

As with the Legal Files documents, the Court has undertaken a *de novo* review of the Elwell Files documents *in camera.* The Court concludes the following documents are protected by privilege:

Document Nos.

03213–03222
00186–00187
03223
11425
05624–05639
5690
6233
07266–07269
07290–07292
07313–07326
07656
07657
07658
07659
07660
07661
08185–08215
03226
05681–05685
05264
05549
04908–04909

10. The Court concludes all of the contested documents are relevant or "appears reasonably calculated to lead to the discovery of admissible evidence." *Fed.R.Civ.P.* 26(b)(1). Plaintiffs contend they have no other source from which to discover the underlying facts. Defendant has not suggested any of the underlying facts discussed

in the documents have been disclosed to Plaintiffs. Nor has Defendant suggested the documents have been available to Plaintiffs through any other source. Therefore, for those non-opinion documents protected only by work product privilege, the Court concludes Plaintiffs have made the requisite showing of substantial need.

The Court concludes the following documents are not protected by privilege (the Court is not convinced the "driving force," *National Union Fire Ins. Co. of Pittsburgh, Pa., supra*, 967 F.2d at 984, behind the preparation of these documents was future litigation; nonetheless, to the extent the documents somehow constitute initially privileged work product, all of the documents constitute non-opinion work product for which the Court concludes Plaintiffs have provided the requisite substantial need for discovery):

Document Nos.

04391
04906–04907
04910–04912
04956–04958
04967–04969
05112–05113
05691–05693
05729–05730
05731–05748
05917–05927
08174–08177
08141–08143
08144–08149, 18151
05132–05133
02870–02884
02885–02899
05756–05761
05664–05668
05672
05825–05827
05831–05832
05901
07516

An initial showing of work product privilege has been made for the following documents,[11] but the Plaintiffs have demonstrated the requisite substantial need for discovery:

Document Nos.

02183–02184
05652–05658
05755
05764–05771
06232
06234–06237

06244
06295
07360–07362
07363–07365
08082–08084
07662
08127–08132
08133–08140
06068
06089
05669
05551–05597
05762–05763

The following documents are protected by partial privilege, *National Union Fire Ins. Co. of Pittsburgh, Pa., supra*, 967 F.2d at 985 and *United States v. (Under Seal), supra*, 748 F.2d at 875, n. 7, as follows: The last sentence in Document No. 05694 is privileged and shall be redacted (the remaining balance of the document is not privileged); in Document Nos. 06241–06242, all dollar amounts referring to settlement to the right of the prayer column shall be redacted (the remaining balance of the documents are not privileged); in Document No. 06243, of the four graphs, only the graph entitled "vehicle fuel-fed fire lawsuits" is not privileged—the remaining balance of the document shall be redacted; in Document No. 08150, paragraph No. 5 shall be redacted (the remaining balance of the document is not privileged).

Finally, four documents submitted to the Court are illegible. Defendant is **ORDERED** to furnish to the Court by return mail legible copies of the following documents: Document Nos. 10254–10258; 10252–10253; 05828–05830; 05835–05936.

## IV.

### CONCLUSION

Consistent with the foregoing, Defendant is **ORDERED** to make available to counsel for the Plaintiffs copies of those documents not covered by privilege, in accord with Part III of this Memorandum Opinion, within three days of receipt of this Order. The copies must be fully legible. Plaintiff is not entitled to discover the documents the Court has concluded are covered by privilege. De-

11. Defendant asserts attorney-client privilege over several of the listed documents; the Court concludes that privilege is inapplicable to those documents.

fendant must also furnish to the Court legible copies of the four documents the Court has been unable to examine due to the poor quality of the copies submitted.