**FRONT ROYAL INSURANCE COMPANY, Plaintiff,**

v.

**GOLD PLAYERS, INC., and Ben M. Frizzell, Jr., Defendants.**

**No. Civ.A. 98–0030–A.**

United States District Court, W.D. Virginia, Abingdon Division.

June 7, 1999.

James C. Skilling, Richmond, VA, for plaintiffs.

Robert Wayne Austin, Abingdon, VA, for Gold Players, Inc.

William Moffet, Abingdon, VA, for Ben M. Frizzell, Jr.

## MEMORANDUM OPINION

SARGENT, United States Magistrate Judge.

### I. Background and Facts

This matter is before the court on a motion to compel, ("Motion to Compel"), filed by the defendant, Ben M. Frizzell, Jr., ("Frizzell"), seeking the court to overrule the objections of the plaintiff, Front Royal Insurance Company, ("Front Royal"), and order Front Royal to respond to his First Interrogatories and Request for Production served on February 22, 1999. The matter is before the undersigned pursuant to an Order entered March 30, 1999, referring all pretrial matters in this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). A hearing was held on this matter on May 13, 1999.

The parties to this discovery dispute have filed legal memoranda with attached exhibits in support of their positions for the court's consideration. Front Royal also has filed a Privilege Log listing each document it has withheld from production under a claim of privilege. The undersigned has reviewed *in camera* each of the documents listed on the Privilege Log. Front Royal claims that the documents it has withheld are protected from production during discovery by the attorney-client privilege, the work-product doctrine or the Virginia Arson Reporting Immunity Act, VA.CODE ANN. § 27–85.4 (Michie 1997 Repl. Vol.). At the May 13 hearing, Frizzell withdrew his motion to compel with regard to many documents which, based on the representations of Front Royal's counsel, Frizzell concedes are protected by the attorney-client privilege.

While the case is currently before the court on a discovery dispute, the parties' legal memoranda set out several undisputed facts. In December 1996, Frizzell was leasing a commercial property site located on East Main Street in Abingdon, Virginia, to

Gold Players, Inc., ("Gold Players"). Gold Players operated a restaurant on the site, which was insured by Front Royal. On or about December 29, 1996, there was a fire at the restaurant, and Gold Players submitted a claim to Front Royal for damages caused by the fire. On February 29, 1998, Front Royal filed this action seeking a declaratory judgment that it is not obligated under its insurance contract for any losses caused by this fire. On June 26, 1998, Gold Players filed a counterclaim against Front Royal, alleging breach of contract, bad faith denial of coverage, conversion of wrongfully held funds, violation of the Virginia Unfair Trade Practices Act, VA.CODE ANN. §§ 38.2–500 *et seq.*, and detrimental reliance. On August 13, 1998, Frizzell, as owner of the property involved in the fire, filed a motion to intervene, which was granted by the court on November 19, 1998.

## II. Analysis

■ Federal Rule of Civil Procedure 26(b)(1) states that the parties to a case may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. FED. R.CIV.P. 26(b)(1). The party opposing discovery bears the burden of showing that information or materials withheld from discovery are protected by an asserted privilege or the work-product doctrine. *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998) citing *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). Furthermore, evidentiary privileges are strictly construed in federal court. *See Trammel v. United States,* 445 U.S. 40, 50–51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *United States v. Jones,* 683 F.2d 817, 818–19 (4th Cir.1982).

### A. Virginia Arson Reporting Immunity Act

In 1979 the Virginia General Assembly enacted the Arson Reporting Immunity Act, VA.CODE ANN. §§ 27–85.4 *et seq.* (Michie 1997 Repl.Vol.) ("the Act"), in an effort to promote cooperation between law enforcement agencies, fire departments and insurance companies in the investigation and prosecution of acts of arson. Comment, *Criminal Procedure, Twenty–Fourth Annual Survey of Developments in Virginia Law, 1978–1979,* 66 VA.L.REV. 261, 278–79 (1980); *see Southern New England Television Service v. The Hartford Insurance Group,* 1992 WL 154416 (Conn.Super.Ct. June 23, 1992) (similar legislation enacted in Connecticut to encourage cooperation in cases of suspected arson). The Act offers insurance companies and certain "authorized" agencies qualified immunity for sharing information regarding fires which are suspected of being acts of arson. *Harris v. USAA Cas. Ins. Co.,* 37 Va.Cir. 553, 566 (1994). The Act requires an insurance company, which has reason to believe that a fire loss in which it has an interest may be of "other than accidental cause," to notify certain authorized agencies and provide them with all information the insurance company has gathered as a result of its inquiry into the fire loss. VA.CODE ANN. § 27–85.5(B)(1); *see A & E Supply Co. Inc. v. Nationwide Mutual Fire Insurance,* 612 F.Supp. 760, 764 (W.D.Va.1985) *rev'd on other grounds* 798 F.2d 669, 670 (4th Cir. 1986). The Act further requires insurance companies to provide certain information regarding fire losses when a written request is made by an authorized agency. VA.CODE ANN. § 27–85.5(A). The Act also allows insurance companies to receive "relevant information" regarding a fire loss from certain authorized agencies. VA.CODE ANN. § 27–85.5(D). The Act states that "[a]ny authorized agency and insurance company ... who receives any information furnished pursuant to this article, shall hold the information in confidence until such time as its release is required pursuant to a criminal or civil proceeding...." VA.CODE ANN. § 27–85.6.

It is the meaning of the language of this statute which is in dispute in this case. Front Royal argues that the language of this section prevents it from voluntarily producing any information received from the various authorized agencies pursuant to this Act in response to Frizzell's discovery requests. Front Royal asserts that this Act protects this information from production until such time as a court orders it to produce the

information. On the other hand, Frizzell asserts that this language does not preclude Front Royal from providing the information in response to a formal discovery request made in relation to a pending civil proceeding.

■ Neither party has provided the court with any authority for its position, and the court can find no decision which interpretes the language of § 27–85.6. The plain language of the statute makes clear that a subpoena or court order is not necessary for the exchange of information between insurance companies and authorized agencies. VA. CODE ANN. § 27–85.5(A), (B) & (D); *see Commonwealth v. Ball,* 523 Pa. 216, 565 A.2d 1143 (1989) (similar Pennsylvania statute does not require subpoena for release of information by insurance company to authorized agency). Once an insurance company receives information furnished pursuant to the Act, however, § 27–85.6 states that this information must be held "in confidence until such time as its release is required pursuant to a criminal or civil proceeding...." VA. CODE ANN. § 27–85.6. While many states have enacted acts similar to Virginia's Arson Reporting Immunity Act, and most of these acts contain language similar to that found in § 27–85.6,[1] the court can find no federal or state case which interprets this language. The court has found one case in which the Superior Court of Connecticut has stated that similar language in Connecticut's insurance statutes[2] allows information provided to authorized agencies to be produced in response to "ordinary discovery procedures" in a civil matter. *Carrano v. Sadl,* 1997 WL 331043 (Conn.Super. June 10, 1997).

■ When confronted with a question of statutory construction, such as this, the court's inquiry should begin with an examination of the language of the statute. *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 653 (4th Cir.1996), *cert. denied,* 519 U.S. 1077, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997); *accord Shafer v. Preston Memorial Hospital Corp.,* 107 F.3d 274, 277 (4th Cir.1997); *United States v. Blackwell,* 946 F.2d 1049, 1052 (4th Cir.1991). "[I]f the statutory language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and ... the sole function of the courts is to enforce [the statute] according to its terms." *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994) (internal quotations omitted).

■ This statute's interpretation turns more on the language that is not found in it, however. This section does not state that a court order or subpoena is necessary before an insurance company may produce documents or information it has received pursuant to this Act. As set out above, the act states simply that an insurance company which receives such information must hold it in confidence until "such time as its release is required pursuant to a criminal or civil proceeding...." VA.CODE ANN. § 27–85.6. Under both the Federal Rules of Civil Procedure and the Rules of the Virginia Supreme Court, a party to a civil action is required to produce any information and documents which are responsive to a discovery request, and, furthermore, the party may face sanctions if it does not do so. *See* FED.R.CIV.P. 33, 34 & 37; VA.R.S.CT. Rules 4:8, 4:9 & 4:12 (Michie 1998 Repl.Vol.). Also, the Virginia General Assembly, through other legislation it has enacted, has on occasion required a court order or subpoena before other confidential records may be released. *See* VA.

---

**1.** *See* ALA.CODE § 36–19–43(b) (1998); ARIZ.REV. STAT.ANN. § 20–1904 (West 1998); COLO.REV.STAT. ANN. § 10–4–1004(1) (West 1998); CONN.GEN STAT ANN. § 38a–318(d) (West 1999); DEL.CODE ANN. TIT 16, § 6812 (1998); 215 ILL COMP.STAT.ANN 145/1(1)(d) (West 1998); IOWA CODE ANN § 100A.3(1) (West 1998); KAN.STAT.ANN. § 31–405 (1997); KY.REV.STAT ANN. § 304.20–170(1) (Michie 1998); MICH.COMP.LAWS ANN § 29.4(7) (West 1998); NEB.REV.STAT. § 81–5,127 (1998); N.H.REV.STAT.ANN. § 153:13–a(V) (1998); N.M.STAT.ANN. § 41–8–4 (Michie 1998); N.D.CENT. CODE § 18–01–05.1(7) (1997); OKLA STAT.ANN.TIT. 36 § 6503(A) (West 1998); S.C.CODE ANN. § 23–41–40 (Law.Co-op.1998); S.D.CODIFIED LAWS 34–32A–8 (Michie 1998); TENN.CODE ANN § 68–102–115 (1998).

**2.** The Connecticut statutes states in relevant part: "... [A]ny authorized agency receiving any information furnished pursuant to this section shall hold the information in confidence until such time as its release is required pursuant to a criminal or civil proceeding." Conn.Gen.Stat. Ann. § 38a–318(d) (West 1999).

CODE ANN. § 32.1–127.1:03 (Michie 1998 Supp.) (court order or subpoena required to obtain patient's medical records unless patient authorizes release); § 58.1–109 (Michie 1997 Repl.Vol.) (summons, subpoena or court order required for release of confidential tax returns); and § 63.1–209 (Michie 1998 Supp.) (court order required for release of confidential child welfare records except to certain entities and individuals). Inclusion of such language in other statutes leads the court to the conclusion that the General Assembly intentionally omitted any such requirement in this instance. *See De Osorio v. U.S. I.N.S.*, 10 F.3d 1034, 1041 (4th Cir.1993), *citing I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

Based on the above stated reasons, I hold that § 27–85.6 does not require a party to obtain a court order before it may produce documents which it has received pursuant to the Arson Reporting Immunity Act in response to discovery requests issued in a pending civil action. Therefore, I will overrule Front Royal's objection on this grounds and order it to produce any documents which it previously has withheld pursuant to this objection.

B. Work–Product Doctrine

Front Royal also has objected to producing certain documents in response to Frizzell's discovery requests under a claim that these documents are protected from production by the work-product doctrine. These documents fall into three categories: documents created by Front Royal for its use as part of its internal claim file; correspondence and information Front Royal sent to its reinsurance carrier, General Reinsurance Corp.; and statements of potential witnesses which were taken by an investigator who was retained by Front Royal's counsel.

i. Front Royal's internal claim file

Federal Rule of Civil Procedure 26(b)(3) states that documents "prepared in anticipation of litigation or for trial" are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials ... and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The rule also protects against disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3); *see Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ In this case, Front Royal asserts that much of its claim file is protected from disclosure because its investigation of this fire, and the subsequent file produced as a result of its investigation, were done in anticipation of litigation. In particular, Front Royal asserts that the original notice it received of this fire loss stated that the cause of the fire was arson. (Plaintiff's Memorandum In Opposition To Defendant's Motion To Compel, ("Front Royal's Memorandum,") Docket Item No. 25, Exhibit 1.) Therefore, Front Royal argues, it was aware at the time that it received notice of this claim that there was a substantial probability that litigation would occur over the claim. Thus, Front Royal argues, any investigation it performed was done in anticipation of litigation. Frizzell, on the other hand, argues that Front Royal may not use the work-product doctrine to shield from discovery those documents which it created or gathered in the ordinary course of investigating this claim.

In *State Farm Fire and Casualty Company v. Perrigan*, 102 F.R.D. 235, 237 (W.D.Va. 1984), Judge Glen M. Williams of this court recognized that "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim." Judge Williams also recognized that "at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this occurs." 102 F.R.D. at 238 *citing Westhemeco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 708 (S.D.N.Y. 1979). Based on this reasoning, Judge Williams held that a document is not created in anticipation of litigation unless the probability of litigating the claim is "substantial and imminent" or litigation is "fairly forseeable" when it is created. 102 F.R.D. at 238–39.

While it is true that the original notice of loss given to Front Royal branded this fire as an act of arson, it did not contain any information regarding who had started the fire. If this court were to accept Front Royal's reasoning, it must assume that Front Royal had decided upon receipt of notice of this loss that it would not pay this claim and it would force the matter to litigation—without any evidence that its insured had any role in the alleged arson and, thus, without any basis to deny the claim. If that were the case, why did Front Royal wait 14 months to file this action seeking a declaratory judgment that it is not obligated to pay any amount for this fire loss?

Instead, Front Royal, in its legal memorandum, admits that, after receiving notice of this loss, it began its own investigation regarding the cause and origin of this fire and the damages caused by the fire. (Front Royal's Memorandum at 1.) Also, correspondence filed by Front Royal as an attachment to its Memorandum shows that, even though Gold Players retained counsel in April 1997, the parties were still cooperating regarding the investigation of this loss. (Front Royal's Memorandum, Exhibit 2.) Again, if Front Royal had determined at this point that it did not intend to pay this claim, it apparently had not notified Gold Players of this decision.

While there was a distinct possibility that this claim would be litigated from the onset, I find that this possibility was not "substantial and imminent" until Front Royal decided that it was not going to pay this claim and notified Gold Players of this decision on February 1998. Therefore, I hold that the work-product doctrine does not protect from production those documents which Front Royal created or gathered in the ordinary course of investigating this claim prior to this date.

Prior to production, I, however, will allow Front Royal to redact from these documents any information with regard to the reserves it set for this loss. It appears that other district courts have both permitted and denied discovery requests seeking information with regard to insurers' reserves. *See Stonewall Insurance Company v. National Gypsum Company,* 1988 WL 96159, at *6 (S.D.N.Y. Sept. 6, 1988). These courts recognize that there are cases in which insurer reserve information may be relevant to show notice or coverage. *Id.* Frizzell makes no such claim in this case, and, therefore, I have no information before me showing that the reserves Front Royal set for this loss are relevant to any of the issues before this court. *See* FED.R.CIV.P. 26(b)(1).

ii. Correspondence and information sent to reinsurance carrier

Front Royal claims the work-product doctrine also protects from production any correspondence and information which it shared with its reinsurance company, General Reinsurance Corp. Specifically, Front Royal claims privilege for a reinsurance loss notice and general reinsurance report sent by John Ramsey of Front Royal to Dana Camp of General Reinsurance Corporation. (Privilege Log Item 13). The second item is General Reinsurance Corporation's response to the loss notice. (Privilege Log Item 35).

As stated above, the work-product privilege is designed to protect material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney ... or agent) ...." FED.R.CIV.P. 26(b)(3). Thus, the work-product doctrine operates in narrow confines: the anticipation of future litigation must have been the primary motivation which led to the creation of the documents in order to qualify for the privilege. *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir.1992); *Cameron v. General Motors Corp.,* 158 F.R.D. 581, 588 (D.S.C.1994).

Neither party has cited, and the court cannot find, any Fourth Circuit cases directly on point regarding what, if any, protection is to be afforded communications between an insurer and reinsurer. At least one district court, the Northern District of Illinois, has considered the issue, however. In *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132 (N.D.Ill. 1993), an insurer claimed that communications made to its reinsurer were protected from production by the work-product doctrine and the "common interest rule." The district court noted that the general rule is that material which is

otherwise privileged is discoverable if it has been disclosed to a third party. 152 F.R.D. at 139. The court recognized that an exception to this rule exists where the material is shared with a third party who shares a "common interest" with the disclosing party which is adverse to the interest of the party seeking discovery. 152 F.R.D. at 140. In such a case, any existing privilege is not waived. 152 F.R.D. at 140.

The court found that the common interest doctrine can exist between entities in a variety of circumstances, including that of an insurer and its reinsurers. 152 F.R.D. at 140. The court noted that the doctrine exists to enable counsel for clients facing a common litigation opponent to exchange privileged documents and information, including attorney work product, in order to adequately prepare a defense without waiving any privilege. *Id. citing Western Fuels Ass'n v. Burlington Northern R.R. Co.*, 102 F.R.D. 201 (D.Wyo.1984). While the Fourth Circuit has recognized this common interest rule, *United States v. Under Seal*, 902 F.2d 244, 249 (4th Cir.1990), it appears that the Fourth Circuit cases recognizing this rule all have involved privileged materials which were shared with parties which were directly involved in litigation. *See FEC v. Christian Coalition*, 178 F.R.D. 61, 73 (E.D.Va.1998) *citing Under Seal*, 902 F.2d at 249.

In *Allendale* the Illinois district court noted that, as a threshold matter, the common interest doctrine applies to protect only those materials which are otherwise privileged from production during discovery. 152 F.R.D. at 140. "If no privilege shields a document from discovery, then the common interest doctrine is of no use to a party." *Id.* The court held, in part, that the common interest rule did not apply to protect the materials at issue in that case from production because the materials, themselves, were not protected by any privilege. *Id.* After reviewing both the work product privilege and the common interest privilege, the *Allendale* court noted that all of the documents exchanged by the insurer and the reinsurer were created in the ordinary course of business, while processing an insurance claim. 152 F.R.D. at 141. To the extent that there were any communications involving lawyers, these communications were in the context of an attorney for the insurer passing information to the insurer, who then passed that information to the reinsurer. The court noted that there was no consultation between attorneys for the purpose of maintaining a common legal interest which existed because of anticipated litigation. 152 F.R.D. at 141. Instead, these were normal communications between parties with a contractual obligation to keep each other informed about insurance claims. *Id.*

■ Similarly, the information Front Royal seeks to protect from disclosure involves documents sent by John Ramsey of Front Royal Insurance to its reinsurer, General Reinsurance Corp., to notify it of this loss and correspondence from General Reinsurance Corp. to Front Royal regarding this notice of loss. Thus, it appears that Front Royal seeks to use the common interest rule to protect documents which were created in the ordinary course of business under the contractual obligations between insurer and reinsurer. *See* 152 F.R.D. at 136. I find that these documents were not prepared in anticipation of litigation and, therefore, are not protected from production by the work-product doctrine. Also, since these documents were not prepared by or for Front Royal's attorneys, they are not covered by a claim of attorney-client privilege.

### iii. Witness statements

■ Front Royal claims the work-product doctrine also protects from production witness statements which were taken by an independent investigator at the direction of counsel. (Privilege Log Item 43.) In *Guilford National Bank of Greensboro v. Southern Railway Company*, 297 F.2d 921 (4th Cir.1962), the Fourth Circuit recognized that witness statements taken by a party were protected from production under the work-product doctrine, unless the requesting party could show "good cause" for their production under the then-current version of Federal Rule of Civil Procedure 34. At that time Rule 34 stated:

Upon motion of any party showing good cause therefore ... the court ... may ...

order any party to produce and permit the inspection and copying or photographing, ... of any designated documents....

*Guilford National Bank,* 297 F.2d at 923, n. 1. In 1970, Rule 34 was amended to eliminate this "good cause" requirement. Rule 26(b) was amended the same year, however, to add a section specifically addressing the showing which is required before a party must produce trial preparation materials. FED. R.CIV.P. 26(b)(3). Rule 26(b)(3) requires a party to show a substantial need and an inability without undue hardship to obtain the materials by other means. FED.R.CIV.P. 26(b)(3).

The Third Circuit directly addressed this issue prior to the 1970 amendments to the Federal Rules of Civil Procedure in *Alltmont v. United States,* 177 F.2d 971 (3d Cir.1949) *cert. denied Alltmont v. U.S. of America,* 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375 (1950). *Alltmont* was an admiralty case brought by two seamen against the United States and the U.S. Maritime Commission for personal injuries. The seamen served interrogatories on the United States asking for statements taken of witnesses by the Federal Bureau of Investigation on behalf of the government.

While these interrogatories were governed by rules of admiralty law, the provisions appear analogous to those in the Federal Rules of Civil Procedure. In deciding that the documents were privileged from disclosure, the court reviewed the Supreme Court's *Hickman* decision, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and found that the same reasoning that protected an attorney's own interviews and examination of witnesses also should apply to protect the results of interviews and the work product of investigators hired by attorneys. *Alltmont,* 177 F.2d at 976. The court specifically stated:

> While the language of the Supreme Court was ... necessarily directed to statements obtained [by counsel] ... we think that [the *Hickman*] rationale has a much broader sweep and applies to all statements of prospective witnesses which a party has obtained for his trial counsel's use..... [W]e can see no logical basis for making a distinction between statements of witnesses secured by a party's trial counsel

personally in preparation for trial and those obtained by others for the use of the party's trial counsel.

177 F.2d at 976.

The court went on to note that in each case, the adverse party has no greater or different need for the statements and has the opportunity through interrogatories to learn all the pertinent facts gathered from the witnesses. 177 F.2d at 976. It appears from the court's decision, that the statements sought in this case were, as was the case in *Hickman,* from witnesses whose identities were well known and whose availability was unimpaired. 177 F.2d at 975, 976. As a result, the court held that the statement were protected from production *Id.*

Based on the above, I hold that the investigator's notes taken of witness interviews which were conducted at the direction of Front Royal's counsel are protected from production under the work-product doctrine unless Gold Players can demonstrate substantial need and that undue prejudice or hardship will result without such production. FED.R.CIV.P. 26(b)(3).

### III.   Conclusion

Based on the above stated reasons, I will grant Frizzell's Motion to Compel in part and deny it in part. An appropriate order will be entered.