**ALLENDALE MUTUAL INSURANCE COMPANY and Factory Mutual International, Plaintiffs,**

v.

**BULL DATA SYSTEMS, INC., Zenith Data Systems, S.A., Zenith Data Systems Europe, S.A., and Alexander & Alexander, Inc., Defendants.**

No. 91 C 6103.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1993.

**134**

Rebecca Levy Sachs, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ, Robert M. Kalec, Altheimer & Gray, Chicago, IL, for plaintiffs.

Thomas J. Bush, Jr., Saunders & Monroe, Chicago, IL.

Steven C. Krane, Bruce E. Fader, Proskauer, Rose, Goetz & Mendelsohn, New York City, William F. Stevens, McBride, Baker & Coles, Chicago, IL, for defendants.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendants Bull Data Systems, Inc., Zenith D.S. France, S.A., and ZDS Europe (collectively "the ZDS defendants"), pursuant to Federal Rule of Civil Procedure 37, to compel General Reinsurance Corp. ("GenRe") and Sorema North American Reinsurance Company ("Sorema") to produce certain documents.

### I. BACKGROUND

"I think that I shall never see
A poem lovely as a tree"

JOYCE KILMER, TREES (1913), *quoted in* JOHN BARTLETT, FAMILIAR QUOTATIONS, 661:16 (16th Ed.1992).

We quote this poem to give some context to the litigation which forms the background to the current discovery dispute between plaintiffs Allendale Mutual Insurance Company ("Allendale") and Factory Mutual International ("FMI"), and the ZDS defendants. The amount of paper which has so far been expended in this lawsuit is indeed impressive, and no doubt many trees have been cut down to advance the course of this litigation. The court duly notes the sacrifice of those trees in the name of justice.

Allendale is the parent company of FMI, which is the primary insurer of the ZDS defendants. The insurance at issue in this case concerns inventory in a warehouse in Seclin, France, which has been insured in the amount of approximately $48 million. A fire totally destroyed the warehouse and all the inventory contained within. Plaintiffs brought this suit seeking to prove that the insurance issued to the ZDS defendants does not cover the Seclin fire loss.

Well before the fire, and in accord with normal insurance practice Allendale purchased reinsurance from several companies, including GenRe and Sorema. GenRe and Sorema are not parties to the suit, as the insurance contract at issue is solely between FMI, and hence Allendale, and the ZDS defendants. Of the $48 million, Allendale retained $2.5 million, for which it is directly responsible. Allendale then reinsured the remaining $45.5 million. Essentially, GenRe and Sorema are the "insurers" of Allendale, as they and the other reinsurers could ultimately be responsible for paying the $45.5 million to Allendale, who would then pay it to the ZDS defendants. Thus, GenRe's and Sorema's interests closely parallel that of Allendale and FMI in this litigation.

As part of the reinsurance contract, Allendale agreed to provide GenRe and Sorema with information about the status of the ZDS defendants' claim and the course of the investigation into the Seclin fire. Allendale also agreed to keep the reinsurers apprised about the ongoing coverage litigation. These communications mainly took the form of letters and telephone conversations between one of Allendale's claim representatives and claim representatives of GenRe and Sorema.

The ZDS defendants now want to gain access to the documents created as a result of these communications, as part of a broader discovery request. Also at issue here are the notes and memos written by GenRe's and Sorema's claim representatives concerning the information relayed by Allendale's claim representative. The ZDS defendants also want to see documents created by Sorema's claims director concerning the Seclin claim, and letters sent to other third parties by Sorema employees to keep those parties informed of the status of the Seclin fire loss claim.

GenRe and Sorema have refused to produce the documents. Allendale alleges that

all the documents contain either the work product of Allendale's counsel, or reflect confidential communications, concerning legal advice, between Allendale's counsel and employees of Allendale, and as such are protected by either the work product or attorney-client privilege. Allendale also asserts that these privileges were not waived when the information was passed on to the third parties GenRe and Sorema, because Allendale and its reinsurers have a common interest in the Seclin claim. Consequently, says Allendale, GenRe and Sorema can properly receive the material in order to further this common interest. Sorema also alleges separately that some of the documents are irrelevant and so beyond the scope of discovery.

The ZDS defendants naturally dispute all of these allegations. They claim that there is no evidence that the documents in question contain privileged material, because the documents are not described with enough particularity to enable a court to make a determination, and because only a few of the communications were either by a lawyer or to a lawyer. The ZDS defendants maintain that the material was created in the ordinary course of processing an insurance claim, and so cannot qualify for protection under any privilege. They further allege that the Sorema documents are relevant because they pertain to the reasons why Allendale refuses to pay on the claim.

## II. ANALYSIS

 Both the attorney-client privilege and the work product privilege are important limitations on the scope of discovery. The work product privilege exists so that one party cannot gain an unfair advantage over another by learning the other party's counsel's strategies and legal theories. *Binks Mfg. Co. v. Nat. Presto Industries, Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). The attorney-client privilege is designed to prevent the disclosure of confidential information about a client. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). However, the scope of discovery is generally broad, and courts look unfavorably upon anything which narrows that scope. As the attorney-client and work product privileges obscure the

search for the truth, they are both narrowly construed by courts to restrict their impact upon the discovery process. *See, e.g., In re Walsh*, 623 F.2d 489, 493 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). The Seventh Circuit's cases are consistent with this general rule, in their warning that the scope of privileges "should be confined to the narrowest possible limits." *Lawless*, 709 F.2d at 487. In accordance with the holdings of the Seventh Circuit, this court also narrowly interprets any claim of attorney-client or work product privilege. *See, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84 (N.D.Ill. 1992).

In this case we will begin by analyzing Allendale's, GenRe's, and Sorema's claims of work product privilege, then look at their claims of attorney-client privilege, then examine Sorema's assertion that some of the documents are irrelevant. We will end with a review of the allegation that the common interest doctrine serve to keep intact any privilege which might otherwise exist for documents or communications transferred from Allendale to GenRe and Sorema.

### A. The Claims of Work Product Privilege

The work product privilege is designed to protect material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney .... or agent)...." Fed.R.Civ.P. 26(b)(3). *See also, Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The "mental impressions, conclusions, opinions, or legal theories" of an attorney are also to be specially protected. *Taylor*, 329 U.S. at 510–11, 67 S.Ct. at 393. Work product is protected because it would otherwise confer an unfair advantage to a lawyer by allowing him to advance his case based on the work of another attorney, and to unfairly have access to material which would allow him to counteract the other attorney's strategy. *Binks*, 709 F.2d at 1118.

 But the work product privilege operates only within narrow confines. The principal restriction is that the material in question must have been produced in anticipation

of litigation. *See,* Fed.R.Civ.P. 26(b)(3); *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991). Furthermore, the anticipation of future litigation must have been the primary motivation which led to the creation of the documents. *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir.1992). Although the litigation need not be ongoing or imminent, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982). Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable. *Harper,* 138 F.R.D. at 660, 661; *Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 570 (S.D.Ind.1990).

■ In the present case *not one* of the documents in the possession of GenRe and Sorema, and allegedly protected by the work product privilege, were prepared in anticipation of litigation. Each document seems to have been created as part of the ordinary course of business between the insurer and its reinsurers. It is the very nature of an insurer's business to investigate and evaluate the claims of its insured, and the fact that the investigation and evaluation continues after litigation commences is not conclusive proof that material has been created to aid in that litigation. *Harper,* 138 F.R.D. at 662–63. Moreover, Allendale was contractually obligated to continually notify its reinsurers of the status of the Seclin claim, and such routine notifications do not qualify as work product of an attorney or agent of Allendale prepared in anticipation of litigation.

A more detailed discussion of the documents at issue here may help to explicate our finding. Information from the privilege logs and briefs submitted by the parties reveals that of the 23 documents alleged by Sorema to be protected by the work product privilege, 18 of them were created by Sorema's claims director as part of his normal duty to monitor losses (Sorema Brief at 6, 7). An Allendale claims representative generated two of the documents as part of her duties in investigating the Seclin claim and reporting the results of that investigation to Sorema. A Sorema employee sent a letter to Sorema's retrocessionaires to keep them informed of the course of the investigation (Sorema Brief at 13). A Sorema underwriter sent a memo to his underwriting supervisor, and an unknown person created an agenda as part of an informational meeting between Allendale, its counsel, and its reinsurers.[1]

The documents which GenRe claims are protected are of a similar nature. All of them appear to be in-house insurance documents which plainly were not part of anyone's preparation for trial. For example, some of GenRe's documents are two sets of handwritten notes by an in-house claims manager at GenRe, and apparently not delivered to anyone else. According to the joint brief of Allendale and GenRe, these notes "necessarily reflect [his] analyses and thought processes." (Plaintiffs' brief at 14). How these notes could possibly have been prepared as an aid to litigation escapes this court, as they were never shown to any lawyer, or to anyone else who might plausibly have an effect on Sorema's preparation for litigation in this suit.

■ It is not at all likely that any of the documents at issue here fall under the work product privilege. None of the documents were prepared by lawyers or by agents on

---

1. This document appears to be the same as that received by the ZDS defendants from another reinsurer without objection, a production that occurred only after Allendale's counsel screened the documents. If so, it is a one-page document that lists broad topics to be covered at a November 6, 1991 meeting between Allendale and Allendale's reinsurers. The body of the document reads as follows:

 (1) Cause & Origin—an Overview; (2) Status of Loss and Measurement; (3) Status of Declaratory Judgment; (4) Reserve; (5) Subrogation; (6) Questions

 If this is a typical example of documents that have been withheld, then Sorema truly has stretched the work product doctrine too far. The document at issue is undated, by an unknown author, created for an informational meeting, and contains nothing even approaching anyone's thought processes.

behalf of lawyers. While this in itself is not fatal to a claim of protection, *see, United Coal Companies v. Powell Const. Co.,* 839 F.2d 958 (3d Cir.1988), we find it significant that the vast majority of the documents are simply the private musings of non-lawyer employees of a non-party, which on their face do not appear to be related to preparation for litigation other than in an incidental manner. In other words, these documents are mere insurance business material. As the court pointed out in *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972):

> any report or statement made by or to a party's agent (other than to any attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney's legal expertise nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and not within the purview of the limited privilege of new Rule 26(b)(3) or (b)(4). 54 F.R.D. at 372.

■ Furthermore, neither Sorema nor GenRe nor Allendale provide more than conclusory assertions that the material does constitute protectable work product. The burden of showing that a particular document is privileged is on the party claiming the privilege. *Carte Blanche (Singapore) PTE., LTD. v. Diners Club Int'l, Inc.,* 130 F.R.D. 28, 32 (S.D.N.Y.1990). Twice before we have ruled in this case that any party claiming a privilege must present for each document "a specific explanation of why the document is privileged or immune from discovery," such that we can determine whether the discovery opponent has discharged its burden. *See, Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 1993 WL 20164 1993 U.S.Dist. LEXIS 806 (N.D.Ill.); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 88 (N.D.Ill.1992). Allendale and its reinsurers have completely failed to meet this burden with regards to the documents at issue, and so cannot use the work product doctrine to shield the documents from discovery.

### B. The Claims of Attorney–Client Privilege

■ The attorney-client privilege is designed to protect from discovery documents which reflect communications between a client and his attorney, because such communications might contain confidential information about the client. *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991). As with the work product privilege, the attorney-client privilege is a narrow one, and only applies within certain carefully described limits. In the Seventh Circuit, the scope of the privilege has been defined as follows:

> (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *White,* 950 F.2d at 430.

The privilege applies to communications both by a client to a lawyer and from a lawyer to a client. *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990). But the legal advice given to the client must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice. *United States v. International Business Machines Corp.,* 66 F.R.D. 206, 212 (S.D.N.Y.1974). As a result, where documents or conversations are created pursuant to business matters, they must be disclosed. *International Business Machines Corp.,* 66 F.R.D. at 212.

■ We find that none of the documents which Allendale, GenRe, or Sorema claim are protected are in fact covered by the attorney-client privilege. To begin with, *not one* of the documents was either created by a lawyer, or was created by an employee of any of the companies and sent to a lawyer. As in our discussion of the work product privilege, all of the documents here appear to have been generated in the ordinary course of business of the insurer and its reinsurers, and none of them seem to be for the purpose of seeking advice from legal professionals acting in that capacity.

Again, we can more easily demonstrate the grounds for our holding by discussing separately each group of documents for which

protection is claimed. The first group of documents consists of communications between an Allendale claims representative and claims representatives of Sorema and GenRe. According to Allendale, these documents are privileged because the information contained within originated from Allendale's counsel, and Allendale's claims representative was merely passing on that information, which is alleged to "reflect counsel's advice, opinion and litigation strategy." (Plaintiffs' Brief at 4). However, as the ZDS defendants correctly point out, information does not become privileged simply because it came from counsel (ZDS defendants' brief at 6). *Defazio,* 899 F.2d at 635. Rather, the key test is whether the communications reflect legal advice given by a legal advisor acting in that capacity.

Here, Allendale asserts that *all* of their claims representative's information about the Seclin claim came from Allendale's counsel (Plaintiffs' Brief at 4). While it may seem somewhat strange that the person charged with investigating an insurance claim should be receiving all her information from her own company's counsel, nevertheless this assertion by Allendale would seem to establish that the information given to the claims representative is not the advice of counsel, but ordinary insurance information. That is, if the claims representative did in fact receive all of her knowledge from an attorney, then the attorney must have been giving far more than just legal advice, if any legal advice was given at all. Indeed, one of the documents held by Sorema apparently reflects an opinion from an unidentified Allendale lawyer regarding the establishment of insurance reserves for the Seclin loss, a distinctly non-legal area of expertise (Sorema Brief at 14). The same document is described elsewhere as containing the analysis of an unnamed Allendale employee who relied upon information received from counsel. Regardless of which description is correct, insurance reserves are the regular business of insurance companies, not a part of legal advice. The fact that the material was produced originally by a lawyer is irrelevant if, as is the case here, the material reflects ordinary insurance information.

The other documents in this group are similarly devoid of any connection to legal advice. Allendale and its reinsurers are unable to identify a single attorney-client communication relating to a request for legal advice that is implicated by these documents. For example, two of the names that appear infrequently on the privilege log of GenRe are said to be attorneys employed by GenRe, but it seems doubtful that either was acting as a lawyer in the communications. Neither person is a member of GenRe's legal department, and neither is licensed to practice in the state of Connecticut, where GenRe is located. On the evidence presented, the most we can assume is that these two individuals may be law school graduates who are functioning in some business capacity. One of the persons is in fact described as "a GenRe claims representative and attorney." (Plaintiffs' Brief at 7). It seems highly unlikely that these persons were operating as lawyers dispensing legal advice.

The second group of documents consists of 15 documents withheld by Sorema which are handwritten notes sent to a file by Sorema's claims director. The director wrote these memos as part of his regular duty to monitor the Seclin loss, but Sorema claims they are privileged because the director made reference to them in various unspecified communications with Sorema's in-house counsel. We find that this novel interpretation of the attorney-client privilege, forwarded by plaintiff, could not withstand inspection in the clear light of day, for if documents which contained information later discussed with counsel were privileged then virtually every relevant document in every lawsuit would be protected. For example, if a president of a company wrote down in a memo, "I am going to intentionally, willfully, and maliciously breach my contract with the XYZ Company" and then told his in-house lawyer the same thing, according to Sorema the memo is now protected by the attorney-client privilege. This plainly would not only be an incorrect result, but an egregious extension of the privilege. We hold that while a *communication* with the lawyer itself may be privileged, documents created prior to the communication cannot be.

The third group of documents are communications between Sorema and its retrocessionaires, which were created in order to keep the retrocessionaires informed about the Seclin claim. Sorema claims the documents are privileged because they refer to privileged communications. However, Sorema cannot identify the particular attorney-client communication, the name of the Sorema person involved, who else was present during that communication, if anyone, whether the communication involved legal advice, or whether the communication was made in confidence. For two of the documents, Sorema cannot even identify a lawyer who was involved in the communication. Obviously, the basic elements for asserting a claim of attorney-client privilege are lacking here.

The final group is a single document which Sorema asserts is privileged because it is correspondence between two Sorema employees discussing the need for legal advice on some unidentified subject. But no lawyer was a party to that communication, and there is no indication that the matter was ever brought to the attention of a lawyer, let alone made part of anyone's request for legal advice from a lawyer.

■ Another serious defect with the claims of Allendale and its reinsurers that the documents are privileged is that nowhere in any of their briefs is this court given enough information on which to decide whether the documents do in fact contain privileged information. Rather, Allendale, GenRe, and Sorema rely on conclusory assertions that the material reflects the advice of counsel or other confidential facts (Plaintiffs' Brief at 4). The privilege logs, which include plaintiffs' revised November 9, 1993, revision, provided are similarly unhelpful. As with the work product privilege, the burden is on the party opposing discovery to show that the attorney-client privilege applies, and mere conclusory statements will not suffice to meet that burden. *White,* 950 F.2d at 430–31. As Allendale and its reinsurers have completely failed to carry that burden, we find that the attorney-client privilege does not protect any of the documents at issue from discovery.

### C. The Claims of Irrelevance

■ Sorema separately claims that some of the documents requested by the ZDS defendants are beyond the scope of discovery because they are irrelevant. This claim is almost entirely without merit or foundation. We note initially that it comes nearly six months after the subpoena was originally issued, and so is drastically late. Even if we were to overlook this problem, Sorema's assertion does not stand up to even a cursory examination.

In the first place, the documents are quite clearly relevant as a matter of law. Under Fed.R.Civ.P. 26(b)(2), whether insurance is available to cover a judgment is a proper area of discovery. The documents at issue all relate to Allendale's reinsurance, and they are an entirely proper subject of discovery.

Beyond that, the documents are plainly relevant to the facts of this case. An insurance company's reluctance to pay may be predicated in part on its economic advantage in not paying, and its ability to pay. Allendale appears to have had some problem with its reinsurers involving the reinsurance, and these problems may help to explain why Allendale has refused to cover the ZDS defendants' losses for the Seclin fire. Sorema's own brief even implies that there is some tension in its relationship with Allendale, and that there have been some problems between Allendale and Sorema.

Sorema's privilege log establishes that the documents are relevant as well. For example, according to that Log, the subject matter of one document is "Bull Data Systems Seclin warehouse fire loss" and it was discussed in a conversation about "coverage and litigation issues relating to the Seclin fire loss." The relevance of this document is obvious. The other "irrelevant" documents have similar descriptions. Therefore, Sorema's claim that the documents are irrelevant is simply not credible, and borders on the frivolous.

### D. The Common Interest Doctrine

■ The general rule is that material which is otherwise privileged is discoverable if it has been disclosed to a third party. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *In re Horowitz,* 482 F.2d 72,

81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). An exception to this rule is that where the third party shares a common interest with the disclosing party which is adverse to that of the party seeking discovery, any existing privilege is not waived. *United States v. McPartlin,* 595 F.2d 1321, 1336–37 (7th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1980). This is known as the common interest or joint defense doctrine.

■■■■ As a threshold matter, we note that the common interest doctrine only applies to protect documents which otherwise fall under some privilege. *McPartlin,* 595 F.2d at 1336. If no privilege shields a document from discovery, then the common interest doctrine is of no use to a party. In the present case, we have already determined that neither the work product nor the attorney-client privilege applies to the documents in question, and so technically we do not have to reach the applicability of the common interest doctrine. Assuming *arguendo* that some privilege does shelter the documents, we find that any privilege has been waived by disclosure of the communications to the reinsurers, as the common interest doctrine does not fit the facts of this case.

First, the federal courts have jurisdiction over this lawsuit because of diversity, and hence the substantive laws of the state in which this court sits control. A claim of attorney-client privilege is governed by the relevant state's laws, and so is the scope of the common interest doctrine as applied to the attorney-client privilege. Fed.R.Evid. 501; *Samuelson v. Susen,* 576 F.2d 546 (3d Cir.1978). No Illinois court has ever found that an insurer and its reinsurer have a common interest relating to litigation. In *In re Liquidations of Reserve Ins. Co.,* 122 Ill.2d 555, 120 Ill.Dec. 508, 524 N.E.2d 538 (1988), the Illinois Supreme Court observed that:

the interest involved in a reinsurance agreement is different from that involved in a direct insurance agreement. Reinsurance is not a contract to insure those who face the risk of loss by fire or death or accident or any other hazards classified

under the [Illinois Insurance Code]. 120 Ill.Dec. at 511, 524 N.E.2d at 541.

The Court went on to observe that "a contract of reinsurance is not one of insurance but simply one of indemnity." *Id.* at 512, 524 N.E.2d at 542. The Illinois Supreme Court seems to be saying that the interest which the insurer has in an insurance contract is different from the interest which the reinsurer has in that contact. Also, in Illinois the common interest which exists between an insurer and its reinsurers may be commercial, not legal, in nature. As the doctrine only applies where there is an identical legal interest, *see, DuPlan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C. 1974), under Illinois law disclosure of communications to reinsurers by insurers would appear to waive the attorney-client privilege.

We need not rest our opinion on our interpretation of Illinois law, however. The work product privilege in federal courts is governed by Fed.R.Civ.P. 26(b)(3), and so the common interest doctrine as applied to that privilege is governed by federal procedural laws. *United Coal Companies v. Powell Const. Co.,* 839 F.2d 958, 966 (3d Cir.1988). In the federal courts a common interest can exist between entities in a variety of circumstances, including that of an insurer and its reinsurers. *See, e.g., Durham Industries, Inc. v. The North River Ins. Co.,* 482 F.Supp. 910 (S.D.N.Y.1980). But federal court cases do not support the claim in the present lawsuit that the doctrine protects communications between Allendale and its reinsurers.

■■■■ In general, different persons or companies have a common interest where they have an identical legal interest in the subject matter of a communication between an attorney and a client concerning legal advice. *DuPlan Corp.,* 397 F.Supp. at 1172. The interest must be identical, not similar, and be legal, not solely commercial. *Id.* The doctrine exists to enable counsel for clients facing a common litigation opponent to exchange privileged documents and information, including attorney work product, in order to adequately prepare a defense without waiving any privilege. *Western Fuels Ass'n v. Burlington Northern R.R. Co.,* 102 F.R.D. 201 (D.Wyo.1984). In other words,

like the work product privilege, a necessary precondition for the common interest doctrine to apply is that the common interest arise as a result of impending or anticipated litigation, and not in the ordinary course of business. "The privilege reflects a policy favoring exchange of information *between attorneys* representing parties sharing a common interest in litigation." *National Union Fire Ins. Co. v. Continental Illinois Group,* 1987 WL 18933, 1987 U.S.Dist. LEXIS 9765 (N.D.Ill.) (emphasis added).

Quite simply, as we have previously discussed all the documents were created by either Allendale or its reinsurers in the ordinary course of business, while processing an insurance claim. Such communications with attorneys that did take place were in the context of an Allendale attorney giving information about the Seclin claim to an Allendale claims representative, who then passed on that information to GenRe's and Sorema's claims representatives. There was no consultation between attorneys for the purpose of developing a joint defense against a litigation opponent, or for the purpose of maintaining a common legal interest which existed because of the anticipated litigation with the ZDS defendants. These were normal communications between parties with a contractual obligation to keep each other informed about insurance claims. Under these circumstances there could be no reasonable expectation that the substance of the communications would remain confidential once disclosed to the reinsurers, despite Allendale's claim representative's belief to the contrary (Plaintiffs' Brief at 4). Therefore, we find that Allendale waived any privileges that may have existed when, in the ordinary course of business, it disclosed the information contained in the documents at issue to its reinsurers.

Any other result would be an overly broad use of the common interest doctrine. Were we to accept Allendale's interpretation of the doctrine, any time two or more contractually related parties disclosed confidential information to each other during normal business transactions, the privilege would not be waived unless the parties became directly adverse to each other in subsequent litigation. That is, a mere contractual relationship

would allow entities to exchange privileged information back and forth for any reason, at any time, without third parties ever being allowed access to the information. Obviously this is not a rational result. The bounds of the common interest doctrine are much more confined than that. Accordingly, we reject Allendale's portrayal of how the common interest doctrines must be applied.

Indeed, we find it hard to believe that Allendale and the reinsurers seriously expected this argument to have any measure of success, given the case law on the subject. A fundamental prerequisite to a use of the common interest doctrine is that the interest involve more than just business matters. *DuPlan Corp.,* 397 F.Supp. at 1172. Here, where the communications were in the ordinary course of business, neither party could have a legal interest in the information. Even the cases cited by Sorema in support of their use of the common interest doctrine set out quite clearly its proper scope. A minimal reading of the language in those cases suffices to show that they do not justify Allendale's and the reinsurers' interpretation of the doctrine. *See, National Union Fire Ins. Co.,* 1987 WL 18933, 1987 U.S.Dist. LEXIS 9765 at *2. For Allendale, GenRe, and Sorema to advance a theory so at odds with the clear language of the courts under these circumstances constitutes a waste of this court's time and the time of the ZDS defendants.

The progress of this litigation as a whole has been marked by repeated discovery disputes over matters which most lawyers should have and would have resolved on their own. The present dispute is an excellent example of the type of tactics which have been prominent to date, where perfectly routine business communications have been somehow imbued with the aegis of the work product and attorney-client privileges. We have already issued two orders in an attempt to limit future disputes on the subject of privileges, and we now put forth this third effort. While we would never ignore good faith attempts to legitimately claim a privilege, we will view with substantial disfavor further motions, briefs, and arguments by either side which are no more supportable than Allendale's and its reinsurers' arguments were here. We give this warning to

the parties so that they may take whatever action is necessary to avoid further conduct that may be found *not* to be well grounded in fact or warranted by law, or otherwise found to be improper, or cause unnecessary or needless litigation expense. We further caution the parties to avoid those activities that could unreasonably and vexatiously multiply these proceedings. Lastly we openly voice our concern regarding the course of this lawsuit in an effort to do our part to preserve the planet's ecosystem by reducing the amount of paper expended, and thereby saving a few trees.

## III. CONCLUSION

For the reasons set forth above, the ZDS defendants' motion to compel production of documents is GRANTED. Plaintiffs and GenRe will produce in full, unredacted form, within five days the following documents: 2, 5, 9–12, 16, 17, 19, 21–26, 30, 32, 34–43, 45, 47–53, 55, 57–64, 67, 68, and 70.[2] Sorema will produce in full, unredacted form, within five days the following documents: 1–22, 24, and 25.

2. Allendale and GenRe assert that some of the privilege issues on this motion will evaporate by their production of some documents with redactions of allegedly privileged information. They do not even attempt to show that any of the information to be redacted meets the specific requirements for a privilege claim. This obviously does not meet the burden that our previous orders have placed upon the party resisting discovery. In light of the failure of proof, and the fact that we have found that no privilege protects the documents, all of the documents are ordered to be produced in full, unredacted form.