**MINNESOTA SCHOOL BOARDS ASSOCIATION INSURANCE TRUST, Plaintiff,**

v.

**EMPLOYERS INSURANCE COMPANY OF WAUSAU, A Mutual Company, a corporation, Defendant.**

No. 98 C 6285.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 6, 1999.

Gregory S. Norrod, Oppenheimer, Wolff & Donnelly, Chicago, IL, for Plaintiff.

Jeffrey L. Kaser, Blatt, Hammesfahr & Eaton, Chicago, IL, Eugene Sheih, Zelle & Larson, Minneapolis, MN, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LEVIN, United States Magistrate Judge.

At issue before the court are Employers Insurance Company of Wausau's Motions to Quash the Subpoenas Duces Tecum that MSBAIT served on CNA and Aon.

## *BACKGROUND*

Plaintiff, Minnesota School Board Association Insurance Trust ("MSBAIT") and Defendant, Employers Insurance Company of Wausau ("Wausau") are engaged in an insurance coverage dispute in federal court in Minnesota. MSBAIT is seeking coverage under an excess insurance policy by Wausau for loss and damages that occurred as a result of an April 25, 1994 fire at Burnsville High School in Burnsville, Minnesota.

MSBAIT seeks resinsurance documents pursuant to subpoenas served on Wausau's resinsurers, CNA Resinsurance ("CNA") and Aon Re, Inc. ("Aon").[1] Wausau has already produced thousands of pages of documents, including its reinsurance file. On August 21, 1998, MSBAIT served a subpoena on CNA and Aon. On August 28, 1998, Wausau served written objections to the CNA and Aon subpoena on work product grounds. On September 9, 1998, Wausau provided MSBAIT with a privilege log identifying three work product documents:

1. April 18, 1997 letter from Mark Feinberg, a Wausau litigation attorney, to Federal Magistrate Boylan regarding the status of the litigation and Wausau's position; [2]
2. April 23, 1997 letter from attorney Feinberg to Raymond Charleston, a Wausau employee, regarding the status of the litigation; and
3. May 15, 1997 letter from Phillip W. Gjevre, a Wausau employee, to Marge Hubbard, an Aon employee, regarding communication with counsel on the status of the litigation.

At issue before the court are Wausau's Motions to Quash the Subpoenas Duces Tecum that MSBAIT served on CNA and Aon. For the reasons set forth below, Wausau's motions are hereby granted.

## *ANALYSIS*

Wausau makes four arguments in support of its motion to quash the subpoenas directed at Aon and CNA, including: (1) Wausau has standing to move to quash the subpoenas; (2) Wausau's objections to the subpoenas were timely; (3) the three documents at issue are protected by the work product privilege; and (4) Wausau did not waive the work product privilege when it communicated with CNA and Aon. Each of these arguments will be addressed below.

### I. Wausau Has Standing to Move to Quash the Subpoenas

Wausau first argues that it is well-settled that a party has standing to object to a subpoena directed at a nonparty when the party claims a "personal right or privilege" regarding the documents sought. *Hunt Int'l Resources Corp. v. Binstein,* 98 F.R.D. 689, 690 (N.D.Ill.1983). Wausau correctly argues that its objection to the subpoenas on work product grounds falls squarely within the meaning of claims of personal rights or privileges, thus Wausau has standing to object to MSBAIT's subpoenas.

### II. Wausau's Objections Were Timely

MSBAIT contends that Wausau waived its work product objections because it did not provide a privilege log within fourteen days after the subpoena was served on Aon.

Wausau argues that because it served written objections to the subpoenas within fourteen days, in accordance with F.R.C.P. 45(c)(2)(B), it has in fact objected in a timely

1. MSBAIT disputes that Aon is Wausau's reinsurer.

2. This letter was written pursuant to a court order requiring counsel for Wausau to submit confidential settlement statements to the court in advance of a settlement conference with the expectation that they not be disclosed to opposing counsel. (*See* Def. Reply Aff. of Eugene Sheih.)

fashion, and that it was not required to produce a privilege log within 14 days of service of the subpoenas on Aon and CNA. The court agrees.

Specifically, Rule 45(c)(2)(B) provides in part:

> Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.

In support of its position that the fourteen-day time frame does not apply to the provision of privilege logs, Wausau accurately argues that privilege logs are governed by Rule 45(d)(2), not Rule 45(c)(2)(B). Courts interpreting Rule 45(d)(2) have held that a party claiming a privilege may provide a privilege log within a "reasonable time" as long as objections are asserted within the fourteen-day time frame. *See, e.g., Tuite v. Henry,* 98 F.3d 1411, 1416 (D.C.Cir.1996); *DG Acquisition Corp. v. Dabah,* 151 F.3d 75, 81 (2nd Cir.1998).

In this case, Wausau provided MSBAIT with a privilege log on September 9, 1998, which is certainly within a reasonable time as required under Rule 45(d)(2) (the fourteen day objection period only having expired on September 4, 1998), and as a result, Wausau did not waive its right to object to the subpoena.

## III. The Three Documents At Issue Are Protected By The Work Product Privilege

The work product privilege is an important limitation on the scope of discovery. It exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 135 (N.D.Ill.1993). "The work product privilege is designed to protect material 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative....'" *Id.* (*quoting* Fed.R.Civ.P. 26(b)(3)). Significantly here, the "mental impressions, conclusions, opinions, or legal theories" of an attorney or other party representative are "nearly absolutely protected" and are discoverable only in "very rare and extraordinary circumstances." *Ferrell v. United States Dept. of Housing and Urban Development,* 177 F.R.D. 425, 431 (N.D.Ill.1998); *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

"Although Rule 26 makes 'ordinary' work-product accessible where there is substantial need, the Rule specifically protects 'opinion' work-product from disclosure even in the face of undue hardship." *Ziemack v. Centel Corp.,* 1995 WL 314526 (N.D.Ill.1995) (*quoting Nye v. Sage Products, Inc.,* 98 F.R.D. 452, 454 (N.D.Ill.1982)). " 'Opinion' work-product includes documents revealing mental impressions, conclusions, opinions or legal theories." *Ziemack* at *6 (*citing* FED. R.CIV.P. 26(b)(3)); *see generally Hickman,* 329 U.S. at 511, 67 S.Ct. 385.

Wausau has met its burden of showing that all three of the documents at issue constitute *opinion work product,* and that they are entitled to protection from disclosure. As to the letter from Mark Feinberg to Magistrate Boylan, Wausau points out that it contains attorney Feinberg's opinions and mental impressions on the status of the litigation and Wausau's position. As to the letter from Mr. Feinberg to Raymond Charleston, Wausau points out that it contains attorney Feinberg's opinions and mental impressions on the status of the litigation. Finally, as to the letter from Phillip Gjevre of Wausau to Marge Hubbard, Wausau affirms that it contains attorney Feinberg's opinions and mental impressions on the status of the litigation and Wausau's position. Thus, as stated, the court concludes that the documents in question do in fact constitute *opin-*

*ion work product* and as such, should be shielded from disclosure, assuming that Wausau has not otherwise waived its right to rely on such privilege.[3]

### IV. Wausau Did Not Waive The Work Product Privilege When It Communicated With CNA and Aon

MSBAIT, essentially, contends that Wausau waived the work product privilege by communicating the subject documents to CNA and Aon.

Wausau argues that waiver only occurs if the disclosure of work product to a third party "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). In this case, Wausau maintains that it did not waive the work product privilege when it providéd the three documents to CNA and Aon. Wausau points out that the three documents were provided pursuant to a request by these interested and concerned reinsurers due to their common interest in evaluating and minimizing the exposure arising from the MSBAIT suit. (Gjevre Aff. ¶ 2.) Wausau avers that it did so in these instances with the expectation of confidentiality. (Gjevre Aff. ¶ 3.)

MSBAIT claims that Aon is not a reinsurer of Wausau. MSBAIT points to a list prepared by Aon, which allegedly listed all of Wausau's reinsurers, but which did not include Aon. MSBAIT draws the conclusion that Aon is not a reinsurer at all, but rather a reinsurance **broker.**[4] The absence of an affidavit or declaration, deposition, exhibit or contract evidencing that Aon was a reinsurer of Wausau leads MSBAIT to conclude that Aon is a broker and has no apparent stake in the outcome of the litigation. Hence, MSBAIT argues that Wausau and Aon do not share the same common interest, and by disseminating the materials in question to Aon, Wausau has waived any work product immunity that might have otherwise attached to these documents.

Wausau contends that it is irrelevant that Aon is actually Wausau's reinsurance **broker** as opposed to one of its actual reinsurers. In reliance on *United States Fire Ins. Co. v. General Reinsurance Corp.,* 1989 WL 82415 (S.D.N.Y.1989), Wausau aptly argues that disclosure of work product to a reinsurance broker does not waive the work product privilege any more than would disclosure of work product to an actual reinsurer. In the reinsurance context, a broker/intermediary's role is to bridge the information gap between ceding office and reinsurer. *Id.* at *3; *see also,* Carter, R.L., *Reinsurance* 50 (2d. ed.1983). "Communications to one's insurer made as a consequence of pending litigation are privileged work product." *Id. See Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators Inc.,* 97 F.R.D. 37, 41 (E.D.N.Y.1983). Since the broker/intermediary is merely a conduit for the relay of correspondence to the reinsurer, disclosure of privileged information to the broker/intermediary is consistent "with the purpose of maintaining the secrecy of [privileged] information from current or potential adversaries." *Id. Quoting Western Fuels Ass'n, Inc. v. Burlington Northern R.R. Co.,* 102 F.R.D. 201, 203 (D.Wy.1984).

MSBAIT also alleges that even if Aon was a reinsurer, Wausau's communication to its reinsurers (CNA and Aon) of the information provided by counsel does not constitute a waiver. Therefore, the documents should be produced. A waiver only occurs, however, if the disclosure to a third party "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. American Tel. & Tel.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). There

3. MSBAIT has not argued or set forth any basis for departing from the "nearly absolute protection" for the opinion work product herein. In the alternative, Wausau argues that the documents at issue are protected from discovery as *ordinary work product,* in any event, because they were created in anticipation of litigation (six months after suit was commenced), are precisely the sort of materials that the work product doctrine seeks to protect from disclosure, and because there has been no showing by MSBAIT of substantial need for the documents in question. This court agrees.

4. MSBAIT relied on Aon's homepage on the internet, on which Aon describes itself as a reinsurance broker. Nowhere on the page does Aon discuss itself as a reinsurer.

has been no waiver herein, since Wausau, as seen, always intended and expected that their communications would remain confidential and protected from common adversaries such as MSBAIT.[5]

*Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132 (N.D.Ill.1993), cited by MSBAIT, is distinguishable. There, an insured sought communications with two of Allendale's reinsurers. The court held, based on the nature of the relationship between the parties involved and the nature of the documents in issue, that the work product privilege did not apply. Unlike here, the court found that none of the documents were prepared by lawyers or by agents on behalf of lawyers. Rather, in the court's words:

> [t]he vast majority of the documents are simply the private musing of non-lawyer employees of a non-party, which on their face do not appear to be related to preparation for litigation other than in an incidental manner. In other words, these documents are mere insurance business material.

*Id.* at 136–37.

The *Allendale* court went on to discuss the common interest doctrine and its application to the facts before it. "The general rule is that material which is otherwise privileged is discoverable if it has been disclosed to a third party." *Id.* at 139. *See also United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). "An exception to this rule is that where the third party shares a common interest with the disclosing party which is adverse to that of the party seeking discovery, any existing privilege is not waived. This is known as the common interest of joint defense doctrine." *Allendale* at 140. *See also United States v. McPartlin,* 595 F.2d 1321, 1336–37 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). The Allendale court went on to state that "[i]n federal courts a common interest can exist between entities in a variety of circumstances, including that of an insurer and its reinsurers." (citations omitted) As seen, Wausau has met the requisite "common interest" doctrine herein.

*Imperial Corp. of America v. Shields,* 167 F.R.D. 447 (S.D.Cal.1995), also cited by MSBAIT, is inapposite here. In *Imperial,* an insured's attorney sent a letter to its insurer demanding insurance coverage. Subsequently, the insured sued the insurer for insurance coverage and alleged that the letter was protected by the work product privilege. The court held that the work product privilege would be waived only if the insured did not reasonably expect that the letter would remain confidential. Since the insured and insurer were disputing coverage and litigation was imminent when the insured's attorney sent the letter to the insurer, the court merely held under the particular case facts therein that the insured clearly intended to waive the work product privilege.

### CONCLUSION

In view of the foregoing, Wausau's Motions to Quash Subpoenas directed at Aon Re, Inc. and CNA Reinsurance are granted.

---

5. Other courts have held that the work product privilege is not waived when an insurer forwards work product information to its reinsurer. *See United States Fire Ins. Co. v. General Reinsurance Corp.,* 1989 WL 82415 at *3 (S.D.N.Y.1989); *Hartford Steam Boiler Inspection and Ins. Co. v.* *Stauffer Chem. Co.,* 1991 WL 230742 at *2 (Conn.Super.Ct.1991); *Great American Surplus Lines Ins. Co. v. Ace Oil Co.,* 120 F.R.D. 533, 537–38 (E.D.Cal.1988); *American States Ins. Co. v. Glover,* 1992 WL 78786 at *6 (6th Cir.1992).