M. Barbara **CHRISTMAN,** Janet M. Toolson, John Archbold, and Ben O. Carroll, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**BRAUVIN REALTY ADVISORS, INC.,** Brauvin Realty Advisors, II, Inc., Brauvin Realty Advisors, III, Inc., Brauvin Realty Advisors, IV, Inc., Corporate General Partners, Jerome J. Brault, and Brauvin Real Estate Funds, LLC, Defendants,

and

Brauvin High Yield Fund L.P., Brauvin High Yield Fund II, L.P., Brauvin Income Plus LP III, and Brauvin Corporate Lease Program IV, Nominal Defendants.

No. 96 C 06025.

United States District Court, N.D. Illinois, Eastern Division.

April 12, 1999.

---

Futterman & Howard, Ronald Futterman, Chicago, IL, Canepa & Cummins, John Cummins, Chicago, IL, The Mills Firm, Robert Mills; Derek Howard, Greenbrae, CA, for plaintiffs.

Winston & Strawn, Robert Tarun, Chicago, IL, Baker & McKenzie, William Schaller, Chicago, IL, Patzik, Frank & Samotny, Ltd., Sheryl Jaffee, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs' Motion to Compel Cezar Froelich, his law firm, Shefsky, Froelich & Devine ("Shefsky"), and his attorneys, McDermott, Will & Emery ("McDermott"), to produce documents that they claim are protected by the attorney-client privilege and/or the work-product doctrine. For the following reasons, Plaintiffs' motion is granted in part, and denied in part.

### BACKGROUND

Plaintiffs in this action are limited partners in four limited partnerships: Brauvin High Yield Fund L.P., Brauvin High Yield Fund L.P. II, Brauvin High Yield Fund L.P. III, and Brauvin Corporate Lease Program IV (collectively "the Brauvin partnerships") *Christman v. Brauvin Realty Advisors, Inc.,* No. 96 C 6025, 1998 WL 483528, at *1 (N.D.Ill. Aug. 12, 1998). Plaintiffs are challenging a proposed transaction in which the assets of the Brauvin partnerships would be acquired by Brauvin Real Estate Funds, L.L.C. ("Brauvin LLC"). *Id.* Jerome J. Brault, the managing general partner of the Brauvin partnerships, owns Brauvin LLC. *Id.* Defendants are the corporate general

partner of each partnership, Mr. Brault, and Brauvin LLC, the purchaser of the Brauvin Partnerships. *Id.* Mr. Froelich, Shefsky, and McDermott are not parties to the lawsuit.

The matter immediately before this Court involves the applicability of the attorney-client privilege and the work-product doctrine. (Plaintiffs' Motion to Compel Production of Documents [Pls.' Mot.Comp.] at 1.) On September 17, 1996, Mr. Froelich, then a general partner of the Brauvin partnerships, resigned from the partnerships. (*Id.* at 2.) On October 15, 1997, Plaintiffs issued a subpoena deuces tecum to Shefsky seeking documents related to the Brauvin partnerships. (*Id.*) Shefsky, as well as McDermott, filed privilege logs asserting that a total of 161 documents sought were protected by the attorney-client privilege and/or the work-product doctrine. (*Id.* at Exs. A, B.) After making a good faith attempt to resolve their differences, the parties failed to reach an agreement. (*Id.* at 2.) Plaintiffs, on September 15, 1998, filed a motion to compel production of these documents. (*Id.* at 1.) The Court ordered Shefsky and McDermott (hereinafter collectively referred to as "the objecting parties") to respond by October 21, 1998; however, they failed to respond. (Plaintiffs' Reply in Support of Motion to Compel Production of Documents [Pls.' Reply Supp.] at 1.) On October 30, 1998, Plaintiffs requested their motion to compel be granted in accordance with Local Rule 12(P). (*Id.*)

### *DISCUSSION*

#### A. *Local Rule 12(P)*

■ Local Rule 12(P) states:

[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing. Failure to file a reply memoran-

dum within the requisite time shall be deemed a waiver of the right to file.

The rule provides courts with "considerable latitude." *Rhoden v. Allen,* No. 96 C 260, 1997 WL 587654, at *3 (N.D.Ill. Sept. 17, 1997). If a party fails to respond to a motion, a court may proceed to rule on that motion without the party's input. *See id.* at *1. (concerning a motion to dismiss, a motion for partial summary judgment, and a motion by the opposing party to extend time); *see also Hines v. Sheahan,* 845 F.Supp. 1265, 1266–67 (N.D.Ill.1994) (considering a motion to dismiss and denying the opposing party's motion for an extended deadline).

Since there was no response to Plaintiffs' Motion to Compel, this Court will rule on the motion without further input from the objecting parties. However, the Court does not grant the motion merely because the objecting parties failed to respond.[1] Instead, this Court, using its discretion, will analyze the merits of the objecting parties' claims, which are set forth in the privilege logs already submitted. (Pls.' Mot.Comp. at Exs. A, B.)

#### B. *The Attorney–Client Privilege*

■ The attorney-client privilege prevents disclosure of matters communicated to lawyers, in confidence, by their clients for the purpose of seeking legal advice. *Swidler & Berlin v. United States,* 524 U.S. 399, 118 S.Ct. 2081, 2086, 141 L.Ed.2d 379 (1998). The rationale for the privilege is two-fold. First, if a client is concerned about confidentiality, there is a substantial possibility that he or she will withhold information from his or her attorney, thereby receiving legal advice not based on all the facts. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("full and frank communication between attorneys and their clients ... promote[s] broader public interests in the observance of law and the administration of justice.").

*Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994) (quoting *Northwestern Nat'l Ins. Co. v. Baltes,* 15 F.3d 660, 664 (7th Cir.1994)).

---

**1.** The Court reminds the parties, however, that " 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.' " *United States v.*

■ Nevertheless, the attorney-client privilege is strictly construed, *Radiant Burners, Inc. v. American Gas Ass'n.,* 320 F.2d 314, 323 (7th Cir.1963), since courts agree that the scope of discovery should be broad in order to aid in the search for truth. *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991); *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D.Ill. 1993).

### 1. Elements of the Attorney–Client Privilege

■ The Seventh Circuit has adopted Professor Wigmore's formulation of the attorney-client privilege:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 WIGMORE § 2292; *White,* 950 F.2d at 430; *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *Radiant Burners,* 320 F.2d at 319. The burden is on the party claiming the privilege to prove each element. *White,* 950 F.2d at 430. Moreover, there cannot be a blanket assertion of privilege; instead, privilege must be raised document by document. *Id.*

### 2. Waiver of the Attorney–Client Privilege

■ Even if all of the aforementioned Wigmore elements are met, the attorney-client privilege can be waived. A client can waive the privilege by sharing information with third parties. *In re Air Crash Disaster at Sioux City, Iowa,* 133 F.R.D. 515, 518 (N.D.Ill.1990). Likewise, a client can waive the privilege by producing similar documents in response to a discovery request. *Ziemack v. Centel Corp.,* No. 92 C 3551, 1995 WL 314526, at *1 (N.D.Ill. May 19, 1995).

### 3. Limitations on the Attorney–Client Privilege

There are limitations on the scope of the attorney-client privilege. For example, courts have held that the privilege does not apply to business advice. *Ziemack,* 1995 WL 314526 at *4. Fee arrangements and bills are not privileged unless they contain confidential communications. *See Pandick, Inc. v. Rooney,* No. 85 C 6779, 1988 WL 61180, at *2 (N.D.Ill. June 3, 1988) (finding time sheets that did not reveal substance of communications or work performed to be discoverable). In addition, the attorney-client privilege does not protect documents whose descriptions are vague—and therefore insufficient to establish the privilege. *See In re Stern Walters Partners, Inc.,* No. 94 C 5705, 1996 WL 115290, at *4 (N.D.Ill. Mar. 13, 1996) (finding that where the Court could not discern from description of documents that a privilege applied, documents would be produced).

## C. The Work–Product Doctrine

■ The work-product doctrine gives qualified protection to documents prepared in anticipation of litigation. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir.1983). The doctrine is broader in scope than the attorney-client privilege. *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The rationale for protecting work product from discovery is to prevent either party from learning the other party's or counsel's legal strategies and theories. *Allendale,* 152 F.R.D. at 135.

### 1. Elements of the Work–Product Doctrine

■ The work-product doctrine protects (1) "documents and tangible things otherwise discoverable" (2) "prepared by or for another party or by or for that other party's representative" (3) "in anticipation of litigation or for trial." FED.R.CIV.P. 26(b)(3). To be protected, work product must have been prepared for adversarial proceedings. *Binks,* 709 F.2d at 1118–19. Work prepared in the regular course of business is not protected by the work-product doctrine.[2] *Allen-*

---

**2.** For example, drafts of proxy materials may

come under the work-product doctrine if the

*dale,* 152 F.R.D. at 135. Moreover, mere anticipation of litigation is not sufficient to invoke the doctrine. *Ferguson v. Lurie,* 139 F.R.D. 362, 367 (N.D.Ill.1991). Finally, the burden of establishing the elements of the work-product doctrine is on the party claiming protection. Binks, 709 F.2d at 1118.

### 2. *Limitations on the Scope of the Work–Product Doctrine*

Unlike the attorney-client privilege, a party may discover certain documents protected by the work-product doctrine by showing "substantial need" and inability to obtain equivalent information "without undue hardship". FED.R.CIV.P. 26(b)(3). "Opinion" work product, however, is not discoverable. *Id.* Such materials include documents revealing "mental impressions, conclusions, opinions or legal theories". *Id.*

### D. *Findings*[3]

#### 1. *Attorney–Client Privilege Findings*

##### a. *Documents Not Within the Scope of the Attorney–Client Privilege*

The objecting parties have claimed the protection of the attorney-client privilege for several documents that do not fall within the scope of the privilege, as defined by Professor Wigmore and the Seventh Circuit.

##### i. Information from a Law Firm's Library

■ Information from a law firm's library is not privileged since it is not a client communication. In addition, the description in the privilege log does not indicate whether this is even private information. Thus, the objecting parties must produce McDermott document 45.

##### ii. Business Advice

■ The Court also finds that several documents that the objecting parties claim to be privileged concern business advice, as opposed to legal advice. These documents include letters regarding offers from CAPTEC to purchase two of the Brauvin partnerships. Therefore, McDermott documents 40, 43, 50, 77, 85, 86, 87, and 88, as well as Shefsky documents 5, 11, 14, 15, 16, 17, 18, 19, 65, 67, and 71, are not within the scope of the attorney-client privilege.

■ Furthermore, the Court finds that drafts of proxy statements, comments to those drafts, and letters regarding the drafts are not within the scope of the privilege because they are not legal advice.[4] Accordingly, the objecting parties must produce the following documents: McDermott documents 6, 13, 15, 58, 60, 94, 96, 97, and 98, and unnumbered McDermott documents dated 5/23/96 (five separate privilege log entries regarding proxy drafts), 6/18/96 (five separate privilege log entries regarding proxy drafts), 7/12/96 (three separate privilege log entries), 7/15/96 (two separate privilege log entries), all of which are from Mr. Froelich's attorneys to Mr. Hershman, attorney for the partnership. In addition, Shefsky documents 25, 26, 27, 76, and 81, as well as unnumbered Shefsky documents dated 7/15/96 and 5/23/96, which also concern the proxy statements, must be produced by the objecting parties.

■ Several other categories of documents for which the objecting parties have asserted the attorney-client privilege do not fall within the scope of that privilege. Because McDermott documents 53, 55, 91, and 95, and Shefsky documents 38 and 47 concern 8–K forms[5] of the Brauvin partnerships, they, also, regard business, not legal, advice. Moreover, McDermott document 61 (notes from a Brauvin partnership meeting), McDermott document 80 (comments on meeting minutes), Shefsky documents 35 and 36 (comments on meeting minutes), and Shefsky documents 43, 69, and 70 (purchase contract drafts) do not pertain to legal advice.

---

drafts were prepared after the lawsuit is filed, but not if the drafts were prepared before. *Ziemack,* 1995 WL 314526 at *5.

**3.** Some documents are not protected for multiple reasons and are addressed under several headings.

**4.** The objecting parties did not raise the work-product doctrine with respect to these documents.

**5.** An 8–K is a form filed with the Securities and Exchange Commission disclosing information such as a change in control or accounting practices.

Accordingly, the objecting parties must produce these documents.

### iii. Bills, Fees and Payment

█ Since there is no indication from the Shefsky privilege log that the bills and payment information in Shefsky documents 20, 28, 59, 61, and 75 contain confidential client communications, the Court finds that these documents are not privileged and must be produced by the objecting parties.

### iv. Lack of Attorney–Client Communication

The objecting parties may not claim the attorney-client privilege for the following documents because neither Mr. Froelich nor his attorneys are parties to the communications: McDermott unnumbered documents dated 5/23/96 to Don Hershman from David Strosberg (three separate privilege log entries); McDermott documents 63, 93, and 99, and Shefsky documents 31 and 50.

### b. *Attorney–Client Privilege Waived*

█ Assuming any privileged information was communicated from Mr. Froelich to his attorneys, the privilege was waived when either Mr. Froelich or his attorneys communicated with persons outside the attorney-client relationship. Thus, the objecting parties have waived the attorney-client privilege as to documents regarding communications between Mr. Froelich's attorneys [6] and Don Hershman,[7] James Brault,[8] and David Strosberg [9] because Messrs. Hershman, Brault and Strosberg fall outside of the attorney-client relationship existing between Mr. Froelich and his attorneys. Thus, the following documents are not privileged: McDermott unnumbered documents dated 5/23/96 to Mr. Hershman from Mr. Murphy (five separate privilege log entries); 6/18/96 to Mr. Hershman from Donald Hilliker (five separate privilege log entries); 7/12/96 to Mr. Hershman from Mr. Hilliker (three separate privilege log entries); and 7/15/96 to Mr. Hershman from Mr. Murphy (two separate privilege log entries). McDermott document 77, a letter from Captec dated September 20, 1996, that was copied to "Jim" Brault, is also not privileged for the same reason.

In addition, the objecting parties have waived their claim of privilege by producing documents similar to the following documents: McDermott documents 6, 13, 15, 35, 40, 42, 43, 50, 53, 55, 58, 60, 61, 77, 82, 83, 85, 86, 87, 88, 91, 94, 95, 96, 97, and 98. These documents include, for example, a letter regarding the proxy statement and drafts of comments to the proxy statement.[10] Thus, these documents are no longer privileged and must be produced by the objecting parties.

### c. *Descriptions Too Vague to Establish the Attorney–Client Privilege*

█ To establish the protection of the attorney-client privilege, descriptions of privileged documents must contain sufficient information for the Court to ascertain the content of the documents. Many of the descriptions in the McDermott and Shefsky privilege logs are too vague to do so. For example, several McDermott documents are described as "fax cover sheet with note." Likewise, a letter with handwritten notes from McDermott attorney Ellen Kollar,[11] which does not state to whom it is to or from, is too vague for the objecting parties to satisfy their burden of establishing the attorney-client privilege. Therefore, the following documents are not privileged: McDermott documents 19, 37, 38, 39, 44, 45, 48, 51, 54, 57, 62, 63, 64, 65, 79, 89, 92, 93, and 99, and Shefsky documents 8, 40, 42, 44, 46, 52, 73, 74, and 80.

---

**6.** Mr. Froelich's attorneys are Don Hilliker, Thomas Murphy and Ellen Kollar of McDermott, Will & Emery.

**7.** Mr. Hershman, an attorney with Holleb & Coff, represents the Brauvin partnerships.

**8.** Mr. Brault is the son of Defendant Jerome Brault.

**9.** Mr. Strosberg is a former general partner of Brauvin High Yield Fund L.P. I and Brauvin High Yield Fund L.P. II.

**10.** *See* Pls.' Mot.Comp., Exs. D, E, F, G, and H.

**11.** Attorney for Mr. Froelich.

### 2. Work–Product Findings

#### a. Documents Not Within the Scope of the Work–Product Doctrine

 However, several documents are not within the scope of work-product protection because they were not prepared in anticipation of litigation. These include documents pertaining to business of the Brauvin partnerships: McDermott documents 1, 3, 5, 8, 9, 12, 13, 14, 16, 17, 20,[12] 21, 22, 35, 47, 67, 70, 71, and 88, as well as unnumbered McDermott work-product claims dated 6/17/96 (four separate privilege log entries), 7/15/96, and 8/22/96 (two separate privilege log entries). Furthermore, Shefsky documents 5, 26, 27, 36, and 43, and the unnumbered Shefsky documents dated 7/15/96 and 5/23/96 are not covered by the work-product doctrine because they, too, relate to the running of the partnerships.

#### b. Descriptions Too Vague to Establish Work–Product Protection

Several claims of work-product doctrine protection by the objecting parties do not provide dates, names or information sufficient to determine the content of the documents. These documents are: McDermott documents 9, 10, 11, 34, 35, 68, 71, 74, 81, 89, and 90;[13] unnumbered McDermott document dated 6/17/96 (four separate privilege log entries); and Shefsky documents 8, 14, 15, 18, 31, and 39.[14]

### E. Summary

The following McDermott documents are not protected by the attorney-client privilege or the work-product doctrine: 1, 3, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 21, 22, 34, 35, 37, 38, 39, 40, 42, 43, 44, 45, 47, 48, 50, 51, 53, 54, 55, 57, 58, 60, 61, 62, 63, 64, 65, 67, 68, 70, 71, 74, 77, 79, 80, 81, 82, 83, 85, 86, 87, 88, 89, 91, 92, 93, 94, 95, 96, 97, 98, 99, and all unnumbered McDermott documents.

The following Shefsky documents are not protected by the attorney-client privilege or work-product doctrine: 5, 8, 11, 14, 15, 16, 17, 18, 19, 20, 25, 26, 27, 28, 31, 35, 36, 38, 40, 42, 43, 44, 46, 47, 50, 52, 59, 61, 65, 67, 69, 70, 71, 73, 74, 75, 76, 80, 81, and unnumbered Shefsky documents dated 7/15/96 and 5/23/96. The objecting parties are ordered to produce these documents.

The following documents are protected by the attorney-client privilege or the work-product doctrine: McDermott documents 7, 18, 20, 23, 36, 41, 49, 52, 56, 66, 72, 73, 76, 78, 84, and 90, and Shefsky documents 24, 39, 45, 49, 53, 54, 55, 62, 63, 64, 66, and 68. The objecting parties need not produce these documents.

### CONCLUSION

**IT IS THEREFORE ORDERED** that:

Plaintiffs' Motion to Compel Production be, and the same hereby is, **GRANTED IN PART, AND DENIED IN PART,** consistent with this Opinion.

---

**12.** However, McDermott document 20 is protected by the attorney-client privilege.

**13.** However, McDermott document 90 is protected by the attorney-client privilege.

**14.** However, Shefsky document 39 is protected by the attorney-client privilege.